NORTHERN NATURAL GAS COMPA-
NY, et al., Helex Group,

v.

O.W. HEGLER, et al.,
Landowner Group,

and

Mobil Oil Corporation, et al.,
Lessee-Producer Group.

Nos. 83–2624, 83–2625, 83–2675 to 83–
2677, 84–1034 to 84–1036, 84–1083,
84–1261, 84–1263, 84–1267 and 84–1298.

United States Court of Appeals,
Tenth Circuit.

May 13, 1987.

Louis Nizer of Phillips, Nizer, Benjamin, Krim & Ballon, New York City (George Berger and Janet P. Kane of Phillips, Nizer, Benjamin, Krim & Ballon, New York City, Charles E. Foster, Los Angeles, Cal., John A. Rayll of Cities Service Co., Tulsa, Okl., Craig A. Coulter of Robinson, Boese, Davidson & Sublett, Tulsa, Okl., Clifford L. Malone of Adams, Jones, Robinson and Malone, Chartered, Wichita, Kan., with him on briefs), for Cities Service Gas Co., Cities Service Helex, Inc. and Cities Service Cryogenics, Inc.

Patrick J. McCarthy, Omaha, Neb. (Dean W. Wallace, Omaha, Neb., Mark H. Adams, II and Teresa J. James of Adams, Jones, Robinson & Malone, Chartered, Wichita, Kan., with him on briefs), for Northern Natural Gas Co., Northern Gas Products and Northern Helex Co.

Laura Frossard, Attorney, Dept. of Justice, Washington, D.C. (Myles E. Flint, Acting Asst. Atty. Gen., F. Henry Habich II, Asst. Atty. Gen., Jacques B. Gelin, Andrew Walch, Janet L. Steckel, Attorneys, Dept. of Justice, Washington, D.C., with her on briefs, John Trezise and Robert Moll, Dept. of the Interior, Washington, D.C., of counsel), for U.S.

Dale M. Stucky of Fleeson, Gooing, Coulson & Kitch, Wichita, Kansas (Gerrit H. Wormhoudt and John T. Conlee of Fleeson, Gooing, Coulson & Kitch, Wichita, Kansas, B.E. Nordling and Leland E. Nordling of Kramer, Nordling, Nordling & Tate, Hugoton, Kansas, Gene Stipe and Richard L. Gossett of Stipe, Gossett, Stipe & Harper, McAlester, Oklahoma, Leo Winters, W.A. McWilliams, Oklahoma City, Okl., with him on briefs), for O.W. Hegler, et al., Landowner Group.

Gerald Sawatzky of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan. (Jim H. Goering of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for Ashland Oil, Inc., Atlantic Richfield Company, Cabot Pe-

troleum Corp., Dorchester Gas Producing Co., Helmerich & Payne, Inc. and Texaco, Inc.; Robert J. O'Connor and Jerome E. Jones of Hershberger, Patterson, Jones & Roth, Wichita, Kan., for Diamond Shamrock Corp., Mapco Production Co., Mobil Oil Corp., and Superior Oil Co.; Glenn D. Young, Jr. of Gott, Young & Bogle, P.A., Wichita, Kan., for Amoco Production Co. and Gulf Oil Corp., with him on briefs).

Before McKAY and SETH, Circuit Judges, and KANE *, District Judge.

SETH, Circuit Judge.

This litigation commenced as interpleader actions brought in the District of Kansas. However, they were related to parallel litigation in Oklahoma and our opinions in the Oklahoma appeals were made applicable to the Kansas trials.

Our remand opinion of these Kansas cases appears as *Northern Natural Gas Co. v. Grounds*, 666 F.2d 1279 (10th Cir.). On remand the trial court heard testimony and received evidence directed to the "work-back" method for the valuation of the intermingled helium at the wellhead. This supplemented evidence introduced at this first trial.

These appeals were taken from the several consolidated cases in the District Court of Kansas after a retrial pursuant to our remand. Certain parties which had taken appeals to this court from the District of Kansas case No. KC–1980 moved to dismiss their appeals and an order of dismissal of January 2, 1986 was entered. These were appeals in No. 84–1262 (National Helium Corp. and Panhandle Eastern Pipe Line Co.), No. 84–1266 (Mobil Oil, et al.), and No. 84–1268 (Amoco Production Co.), from No. KC–1980. Appeal Nos. 84–1261 (Landowners Group appellants), 84–1263 (United States appellant), 84–1267 (Ashland, et al. appellants), 84–1298 (Cities Service Companies appellants), also concerned Kansas District Court No. KC–1980, but only in part, and our January 1986 order did not dismiss these appeals as they concerned

other district court cases. As to the other appeals, No. 84–1083 filed by Northern Natural Gas and subsidiary companies, relates to Kansas District Court case No. KC–1969.

The appeal filed by Cities Service Companies, No. 83–2624, is limited to Kansas District Court case Nos. KC–1945, KC–1946, KC–1947 and KC–1948. Cross appeals to the Cities Service appeal, No. 83–2624, are Nos. 84–1036, 84–1035, 84–1034, 83–2677, 83–2676, 83–2675 and 83–2625.

By order this court consolidated the appeals for all purposes and supplemental briefing was ordered while these appeals were pending. Extensive, detailed and conflicting expert testimony was introduced, briefs were filed, and the trial court heard two days of oral argument. The trial court made findings and conclusions comprising about 70 pages.

The fundamental purpose of the remand was to have applied the "work-back" method to value the commingled helium as supplied by the lessee-producers to the Helex Group as part of the large natural gas stream sold to the pipeline companies. This valuation was necessary in order that the lessee-producers and mineral owner-lessors be paid the reasonable value of that segment of the gas stream.

In our remand (666 F.2d 1279, 1290–91), we stated:

"Thus, the judgment of the trial court is set aside as to the valuation determination. On remand, the trial court shall undertake such further proceedings deemed necessary to enter judgment based upon the value less expense or work-back valuation, subject to the $2.00 per m.c.f. 'floor' or minimum payments to which the lessee-producers and landowners are entitled as set forth in Part III of this opinion. The District Court may undertake such other proceedings deemed proper in the light of this opinion...."

---

* Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

This method of valuation was described in *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381, at 387 (10th Cir.) (Ashland I), as follows:

"We thus must agree that the trial court was correct in seeking an alternative method to 'market price' for establishing the reasonable value of the helium component at the wellhead. It is obvious that the comparable salescurrent market price is by far the preferable method when it can be used. However, it cannot be used when the elements necessary for its proper application are lacking. The trial court thus had to resort to a workback method or price less costs of beneficiation. This was a less desirable method but perfectly valid. Under this method a point was selected where there can be determined an established price and the costs of processing or beneficiation were deducted to move back to the place where the value must be established. "... There is nothing unusual about the method, it is subject to proof, and can be just as accurate as any other method, but it is more difficult to apply...."

The Helex companies, created by the pipeline companies, had extracted crude helium from the gas stream going into the pipelines and had sold it to the Government. The liability of the Helex companies to make this payment was decided in *Northern Natural Gas Co. v. Grounds*, 441 F.2d 704 (10th Cir.). The need for valuation was decided in the *Grounds* case, in *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381 (10th Cir.), and *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 607 F.2d 335 (10th Cir.). The direction for the application of a particular method of valuation was contained in the remand of these cases.

The work-back method of valuation, so directed, starts with an ascertainable price received by the processor extractor for the value of its product. Here the price used was, with some exceptions, that paid by the Government to the Helex companies for crude helium. From this is deducted a fair return on the investment of the extractors and a recovery of costs of extraction. The theory is straightforward, but its applica-

tion is difficult. Most of these difficulties arose from the fact that the extraction plants were operated as part of or related to LPG plants using the same gas stream. The helium extraction plants when operated increased the efficiency of the LPG plants and the allocation of costs between the operations was complicated. There was also much expert testimony on what a reasonable rate of return on the investment should be (this varied from 6% to 15%), what investments in the combined plants should be used, and whether values should be before or after depreciation.

Cities Service and Northern, the Helex companies, appealed asserting error in the trial court's determination of costs and in the return to be applied in the work-back method to determine the reasonable value of the commingled helium place.

The lessee-producers have appealed the trial court's finding of the sale price to the United States of the crude helium extracted by Cities Service, but not by Northern.

The appeals by Cities Service and Northern involve a number of factors which go into the investment upon which a rate of return should be computed, and into the determination of costs of extraction—all part of the work-back method.

The appeal of the lessee-producers directed to the price paid to Cities Service by the Government involves the construction of the contract, escalation provisions and an ultimate cancellation. The price paid figure is, of course, the starting point for the work-back formula.

The landowners-lessors' appeal is an adoption of the position taken by the lessee-producers. There are some three thousand owners from whose land the natural gas stream originated.

The United States has taken an appeal as well. It had under the purchase contracts an indemnity liability in the event the Helex companies had to pay the landowners for the helium extracted from their land. On this appeal the Government is advancing the positions it took early on in the litigation on points which have been decid-

ed, and which in our view cannot be relitigated.

The trial court, as herein described, made many determinations as to the elements which made up the basic factors needed for the work-back method. With the complex accounting and the varied testimony as to proper accounting methods, especially as to cost allocations between the helium plants and the related and sometimes dependent LPG plants, the court was required to weigh conflicting testimony.

The court's conclusions expressed in dollar figures per m.c.f. were as follows:

1. Sales price of crude helium for both companies—the starting point $11.50 per m.c.f.
2. Return on investment:
 Cities—$3.65 per m.c.f.
 Northern—$4.28 per m.c.f.
3. Costs—both companies—$4.00 per m.c.f.
4. Value of commingled helium to
 Northern—$3.22 per m.c.f.
 Cities—$3.85 per m.c.f.

The trial court awarded prejudgment and postjudgment interest as hereinafter described. No attorney fees were awarded except the common fund fees to the attorney for the class of several thousand landowner-lessors.

These appeals concern specific elements which made up the basic structure of the work-back method. The appellants seek to change the factors by pointing out asserted errors by the trial court. We have considered a number of particular elements which may not appear to be significant but become so by reason of the very large volumes of helium concerned. An adjustment of a few cents when applied to such a large volume results in sums in the millions of dollars.

*The Rate of Return to be Applied to Undepreciated Total Investments of Cities and Northern*

■ It is clear that the presentations and the arguments in the trial court were predicated on the application of a rate of return on undepreciated total investment as had

been done in the Ashland case in Oklahoma.

Northern in this appeal argues that the rate of return should be applied to the gross investment before depreciation. This position did not surface in the trial court. With hindsight it could be inferred from an exhibit; however, the other parties and the court were reading the Oklahoma case differently and Northern did not assert its position. Also Northern made no request for different findings post trial, and we will not consider the contention now.

*Percentage Rate of Return*

As to the rate of return, the trial court fixed 15% as a reasonable rate of return. The lessee-producers have not appealed from this determination and this was generally within the rates advocated by the Helex companies. Cities requested a 15% rate.

*Dollars Invested by Cities Service (84–1034, 1035, 1036)*

As to the dollars invested, the trial court examined many costs, allocation of costs, pre-plant and start-up costs which were included by Cities as investment upon which the rate of return would be computed. The court excluded a number of large items which it characterized as "phantom costs." These totaled about four million dollars and included research expenses, estimated expenses by other Cities companies, some interest items and others.

■ On this appeal Cities asserts that the trial court could in its discretion eliminate some of these items, but not all of them. It urges that engineering and supervision expenses should be included. These were incurred by affiliated companies of Cities. Some services were directed to start-up problems.

In our view the record does not support the inclusion of these services in the investment total. The trial court found that the proof was not there to have these expenses allocated to the helium plant and we agree. The trial court noted that these expenses were entered in the Helex company books after the litigation started. The trial court also said that these were current expenses

of litigants and found "no credible link" to helium extraction project.

■ The trial court eliminated from the investment base of Cities the item of "working capital." The expert witness indicated that working capital could be so included under proper circumstances and on a proper showing. There appears to be, as might be expected, a difference of opinion as to what constitutes "working capital." Cities argues that working capital was included in the Ashland case in Oklahoma and should be here. On appeal Cities urges that "basic working capital" should have been included, but perhaps not all the items urged for inclusion before the trial court. Cities' position on appeal is that "basic working capital" should include money in the bank, materials and supplies and delinquent accounts owned by the Government (less interest).

The trial court excluded "working capital" from investment totals as it was presented and supported with the comment that the saving in income taxes attributable to the investment tax credit was sufficient for supplies and operating expenses. (The investment tax credit was applied on the income tax factor in costs.) Cities argues that the investment tax credit was not to be a consideration to be applied by regulatory agencies and should not here be used in the investment base determination.

The restrictions on the use of investment tax credits by regulatory agencies are not applicable here. The trial court's overall determination of the total and the elements to be put into the investment base was a factual matter. We perceive no abuse of discretion. It must be borne in mind that the trial court had decided that a 15% rate of return was proper when applied to the reasonable total investment, and that the return to each company reduced to an amount per m.c.f. would have to be reasonable.

■ The trial court thus found:
"The Court finds that the foregoing amounts allow each Helex Company a reasonable return upon its total investment, after income taxes. Although the application of a given rate of return each

year would lead to minor variations from year to year, the above average amounts, per Mcf, should be applied to all helium production sold to the Government by each company in applying the work-back valuation method."

Cities also argues that an item of "interest during construction" should have been included in the total. However, there was no evidence of such an expense and it remained theoretical.

We find no error on the part of the trial court in its inclusion or exclusion of particular items in or from the total investment figure for Cities.

*Total Investment of Northern*

We also conclude that there was no error in the trial court's inclusion or exclusion of particular elements in the total investments of Northern. Other factors applicable to both companies will be described hereinafter.

*Application of Cost Allowance to Cities and Northern*

■ The trial court reduced the total cost allowance to a per m.c.f. basis and determined this figure to be $4.00 per m.c.f. for each company. Cities Service does not complain of this figure.

Northern in this appeal urges that the cost was too low asserting that allocations between the LPG plant and the helium plant were incorrect. The Northern plant was interrelated with its LPG plant built earlier and expense allocations were difficult. The facilities were also built to accommodate the addition of an ethane plant. Nitrogen was extracted in the plant to improve LPG recovery and to increase the BTU levels in the gas stream for distribution. Northern also claimed a greater cost for "gas conditioning" by its LPG plant for the helium plant than did other companies.

All in all, the record supports the $4.00 per m.c.f. cost element found by the trial court as to both Northern and Cities.

*Sales Price of Crude Helium—Both Companies*

The trial court determined that the sale of crude helium at the extraction plant

outlet was the place to be used. It also decided that the value to be used to start the work-back method was the sales price at that point fixed by contract and practice between the United States and each Helex company. This price varied between the plants as a consequence of the contract negotiations.

The lessee-producers have appealed from the trial court's determination of this price but not from the determination that the plant outlet was the place. The lessee-producers had originally urged that a price for Grade A helium should be the starting point, with adjustments.

■ However, in this appeal the lessee-producers challenge the trial court's determination of the "outlet" price figures. The average price paid by the Government to Cities Service Helex for crude helium during the period in issue was $12.53 per m.c.f. The price paid to Northern Helex averaged $11.59 per m.c.f. and to National Helium $12.58. The volume purchased from the several companies differed widely, the contracts contained escalation clauses, and the initial prices were different. The lessee-producers' objections are directed to the use of the common price for Cities Service.

The trial court discussed the several factors and pricing provisions impacting the average prices paid to Cities and Northern and decided that the "reasonable average value of all crude helium delivered by the Helex companies in these actions was the sum of $11.50 per Mcf." This became the trial court's beginning figure for the work-back method. *See Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381 (10th Cir.). The lessee-producers urge that the determination of the reasonable market value at $11.50 was below the actual price paid by the Government to Cities, and that the "actual" price should be used and it was higher.

The court used the same price-sales price for both Cities and Northern although this did not correspond exactly with a price which was in evidence and which was higher for Cities. As mentioned, the trial court found that the $11.50 figure was the "reasonable average value." A review of the

trial court's findings and conclusions and the examination of the contentions of the parties on appeal demonstrates that none of the dollar figures in any category can be exact. Instead the elements must be derived from much conflicting testimony. We see no objection to the action of the trial court in the way the starting figure was arrived at. All the subsequent figures to be applied were distilled from the mass of evidence. Considering all the elements together we cannot conclude that the trial court was in error on this element. Two Phillips plants were averaged in the Oklahoma case.

### Northern Natural Gas Co.

#### Working Capital

■ Northern on appeal advances similar assertions of error as to the disallowance of several elements which it asserts should have been included in working capital. Northern strongly urges that the unpaid bills of the Government should have been differently considered. However, we must reach the same conclusion on this point as we did as to Cities.

#### Law of the Case

■ Northern complains on due process grounds of our remand to the trial court at 666 F.2d 1279 in 1981 wherein a two dollar floor price was directed. We see no basis for this objection on the law of the case basis as derived from the Oklahoma proceedings. The opportunity to object to the floor figure in the remand was at the time it was made.

We recognize the "law of the case" mandate in Grounds II, the remand which applied the Oklahoma Ashland legal principles to these Kansas cases.

We reach the same conclusion as to Northern as we did as to Cities that there was no prohibition or restriction on the trial court in its use of the investment tax credit.

#### Interest

■ The trial court awarded interest both prejudgment and postjudgment with the division at the judgment entered in the

proceedings before the remand (November 12, 1974). It set 6% for prejudgment and 8% for postjudgment. On remand the trial court used the same prejudgment figure. Thus the interest awarded on the value of the commingled helium was:

6% each year prior to November 12, 1974;

8% on principal and on accrued interest until July 1, 1980;

12% on the same from July 1, 1980 to July 1, 1982;

15% from July 1, 1982 to date of findings (October 18, 1983);

Rate prescribed by 28 U.S.C. § 1961 thereafter.

These interpleader cases were filed by Northern and Cities Service, but plaintiffs were not required to pay the interpleaded funds into court. The trial court exercised its discretion not to order a deposit.

The trial court in its money judgment of November 12, 1974 in favor of the land-owners and lessee-producers for the value of helium also awarded prejudgment interest at 6% per annum to the date of judgment and 8% postjudgment (393 F.Supp. 949, 991). This judgment was appealed and this court stated that the trial court did not abuse its discretion in the award of prejudgment interest at 6% to November 12, 1974 (666 F.2d at 1289–90). The case was remanded for a new trial on the value of the commingled helium. By the time the case got back to the District Court interest rates were changing and the Kansas prejudgment interest rate had been increased to 10% (K.S.A. § 16–201) and the postjudgment rate was increased from 8% to 12% and later from 12% to 15%. The trial court used the statutory rates as guides to what reasonable interest should be.

On remand the trial court ordered interest from November 12, 1974 to November 8, 1983 at the postjudgment rates of 8%–12%–15% guided apparently by the state law changes.

The Helex companies assert that under the mandate of this court the trial court could not increase the 6% rate for prejudgment interest because it was a prohibited departure from the mandate. *El Paso Natural Gas Co. v. Kelly*, 321 F.2d 645

(10th Cir.); *Britton v. Dowell, Inc.*, 243 F.2d 434 (10th Cir.). The argument is that the trial and judgment *on remand* became the division point for prejudgment and postjudgment and not the prior proceedings.

A 6% rate was directed by this court in the Ashland case on remand as apparently no rate had been set initially (554 F.2d 381, 392). The trial court later sought to change the 6% and in Ashland II we reversed on that point (607 F.2d 335, 336) because that element was not open on the remand and was the "law of the case." Interest was thus to be awarded as originally approved by this court (666 F.2d at 1282). Interest was set at 6% to the date of judgment and later affirmed by this court.

In instances where there has been a trial court judgment, an appeal with a reversal and remand followed by a new trial court judgment there arises an issue as to whether the first trial court judgment or the second is the "judgment" to be used to divide prejudgment and postjudgment interest. We considered this issue in *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 607 F.2d 335 (10th Cir.), as to the remanded Oklahoma cases. We there said (607 F.2d at 336):

"The plaintiff urges that postjudgment interest should commence upon the date of the first judgment and not at the end of the remand trial. However, we must hold under 28 U.S.C. § 1961, in view of the extent to which the case was reversed, 'the judgment' for the purpose of interest was that entered by the trial court on remand. *See Hysell v. Iowa Public Service Co.*, 559 F.2d 468 (8th Cir.)."

Here the "extent to which the case was reversed" was from the trial court's helium value determination of between 60 and 70 cents per m.c.f. to a remand to determine the reasonable value but not less than $2.00 per m.c.f. This was a large dollar difference but the reversal was not on any basic liability errors or errors in procedure which affected the basic issues but on a dollar value, a matter of degree. It did

impose a new method of valuation—the work-back method—but the reversal and remand was as to dollars. This reversal for such a purpose was not to a large "extent" or an extent sufficient to change the determinative judgment for these purposes. We hold that the judgment to be used is the judgment of the trial court in 1974.

The trial court's percentages correspond with the Kansas postjudgment interest figures but, as mentioned, it is apparent these were only guides for a determination of reasonable rates. It is apparent that commercial rates increased greatly during this period and the trial court had discretion to keep the rates in accordance with the real world. It should also be remembered, as mentioned, that although these were interpleader actions Cities and Northern were not required to deposit the interpleader funds, but had free use of these substantial sums for an extended period. Cities made a voluntary deposit during the course of the proceedings.

 Cities deposited with a disclaimer a sum computed on the $2.00 minimum provided in the remand, with $15.6 million in interest added to the deposit. The deposit was invested in Treasury bills. In computing this interest Cities used the same steps and intervals as did the trial court in its judgment appealed from and thus recognized its reasonableness. We find no error in the application of the interest assessed by the trial court to the liability of Cities considering the previous deposit which had two segments principal and the then accrued interest. There would seem to be no prohibition on compounding interest assessed by the trial court. If the funds had been deposited initially or in the interim the interest would have compounded by the reinvestment.

We find no error in the determination of the applicable rate of interest by the trial court nor in the computations considering Cities' deposit and the several time factors.

We also affirm the trial court's ruling on attorney fees for the class.

The judgment is in all respects AFFIRMED. IT IS SO ORDERED.