947 F.2d 940
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BISCAYNE OIL & GAS, INC., a corporation; Armer E. White,
Incorporated, a corporation; Donald L. Berg,
Plaintiffs-Appellees,
v.
BURDETTE OIL & GAS COMPANY, INCORPORATED, a corporation;
L.G. Burdette, individually; Foster B. Burdette; Freida
Larch; Brenda Burdette; Michael Burdette, a partnership
doing business as Burdette and Burdette Associates; Harold
Burdette; Janet Burdette; Linda Burdette, Defendants-Appellants.
BISCAYNE OIL & GAS, INC., a corporation; Armer E. White,
Incororated, a corporation; Donald L. Berg,
Plaintiffs-Appellees,
v.
BURDETTE OIL & GAS COMPANY, INCORPORATED, a corporation;
L.G. Burdette, individually; Foster B. Burdette; Freida
Larch; Brenda Burdette, Michael Burdette, a partnership
doing business as Burdette and Burdette Associates; Harold
Burdette; Janet Burdette; Linda Burdette, Defendants-Appellants.
 Nos. 90-2467, 91-2333.
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1991.
Decided Nov. 5, 1991.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CA-80-31-P, CA-81-56-P)
 Argued: F. Lee Bailey, Bailey, Fishman & Leonard, Boston, Mass., for appellants; Phillip Rodney Jackson, Ditrapano & Jackson, Charleston, W.Va., for appellees.
 On Brief: Kenneth J. Fishman, Daniel Patrick Leonard, Bailey, Fishman & Leonard, Boston, Mass., for appellants; Debra L. Hamilton, Ditrapano & Jackson, Charleston, W.Va., for appellees.
 S.D.W.Va. [APPEAL AFTER REMAND FROM 792 F.2D 1117].
 NO. 90-2467 AFFIRMED.
 NO. 91-2333 DISMISSED.
 Before K.K. HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 BUTZNER, Senior Circuit Judge:
 
 
 1
 In Burdette Oil and Gas Co. v. Biscayne Oil and Gas, Inc., No. 851881 (4th Cir. June 16, 1986) (unpublished), we reviewed the district court's judgment rescinding contracts for the sale of oil and gas wells and leases located in West Virginia. The district court found that although the contracting parties were not at fault, they could not perform their agreement. It ordered Burdette Oil and Gas Co. and its associates (Burdette), the sellers, to make restitution to Biscayne Oil and Gas, Inc., and others (Biscayne), the purchasers, in the amount of $650,000, plus interest, representing payments on account of the purchase price. The district court ordered Biscayne to reconvey the property to Burdette. We affirmed the judgment with respect to rescission and reconveyance but remanded the case for further inquiries pertaining to the amount of restitution.
 
 
 2
 Burdette now assigns error to three rulings the district court made on remand: (1) denial of a setoff to reduce restitution in the amount of the tax benefits Biscayne received as a result of the transaction; (2) exclusion of evidence of the cost of capping spent wells and restoring drilling sites Burdette would incur after reconveyance; and (3) imposition of postjudgment interest from the date of the original judgment rather than from the date of the judgment after remand.
 
 
 3
 The district court made some minor adjustments, up and down, in the amount of restitution, reflecting additional payments to Burdette and Biscayne's net income from its operation of the field. The adjustments resulted in an amended judgment of $639,450.24. Neither Burdette nor Biscayne complains about these adjustments.
 
 
 4
 Finding that none of Burdette's assignments of error warrant reversal, we affirm the judgment of the district court.
 
 
 5
 * The district court found that Biscayne and its shareholders received a tax benefit in the amount of $356,578. The benefit is the aggregate of $57,069 windfall profit tax refund and $298,969 in tax savings resulting from flow-through losses and investment tax credits. The court found that, in the absence of fraud, none of the flow-through losses and investment credits claimed by Biscayne shareholders are subject to recapture by the revenue service. It also found that money paid to Biscayne as restitution would constitute income to Biscayne and flow through to its shareholders. The parties do not contest these findings.
 
 
 6
 West Virginia law governs whether Burdette is entitled to a setoff of the tax benefit Biscayne received, but no West Virginia case or statute addresses the issue. Confronted by this lack of pertinent West Virginia authority, the district court turned to the United States Supreme Court, which had recently dealt with the subject in the context of securities fraud. See Randall v. Loftsgaarden, 478 U.S. 647 (1986). Applying Randall, the district court concluded that Burdette was not entitled to a setoff in the amount of Biscayne's tax benefit.
 
 II
 
 7
 We review de novo the district court's perception of West Virginia law, giving careful consideration nevertheless to the district court's legal analysis. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991). Our task, like that of the district court's, is the familiar one of ascertaining in light of guiding principles of state law how the West Virginia Supreme Court would decide the question. See Salve Regina College, 111 S.Ct. at 1218.
 
 
 8
 The district court was not amiss in seeking guidance from a federal decision. In Engeman v. Taylor, 46 W.Va. 669, 714, 33 S.E. 922, 940 (1899), the West Virginia Supreme Court quoted from Neblett v. McFarland, 92 U.S. 101, 103 (1875), to establish as West Virginia law the following precept of rescission:
 
 
 9
 The court proceeds on the principle that, as the transaction ought never to have taken place, the parties are to be placed, as far as possible, in the situation in which they would have stood if there had never been any such transaction.
 
 
 10
 Also, observing the similarity of the state and federal rules of civil procedure creating one form of action, the West Virginia Supreme Court has expressed its agreement with federal decisions holding that the doctrine of laches, not statutes of limitation, is applicable to actions seeking rescission. See Laurie v. Thomas, 170 W.Va. 276, 294 S.E.2d 78, 80-81 (1982). Taking note of the West Virginia court's reliance on federal precedent pertaining to rescission, we are satisfied that the West Virginia Supreme Court would look favorably on a well-reasoned opinion of the United States Supreme Court as a source of law for the allocation of federal tax benefits in an action for rescission.
 
 
 11
 In Randall, 478 U.S. at 655, the Court confronted a split in the circuits concerning the calculation of damages in federal securities litigation. There, as here, the question was whether tax benefits should be taken into account in determining a rescissory award. Randall, unlike the case before us, involved fraud. The Court held that federal security laws and congressional policy to deter fraud required that the amount paid in restitution should not be reduced by tax benefits. 478 U.S. at 655-67. If this were the entirety of the Court's decision, the district court would have received scant instruction, for--as Burdette emphasizes--the case before us does not involve wrongdoing, the need for deterrence, or a statutory remedy. The Supreme Court, however, buttressed its decision by reference to the general law of rescission and restitution. It is the following passage that provided the district court the guidance it sought:
 
 
 12
 Moreover, even at common law, it is quite likely that tax benefits would be ignored for purposes of a rescissory remedy. Under the "direct product" rule, the party seeking rescission was required to credit the party against whom rescission was sought only with gains that were the "direct product" of the property the plaintiff had acquired under the transaction to be rescinded: "The phrase 'direct product' means that which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor." Restatement of Restitution § 157, Comment b (1937). We agree ... that tax benefits, because they accrue only if the tax deductions or credits the investment throws off are combined with income generated by the investor or taxes owed on such income, would in all likelihood not have been deemed a "direct product" of the security at common law.
 
 
 13
 Randall, 478 U.S. at 658. In an effort to distinguish Randall, Burdette argues the tax benefits were a direct product in this case because Biscayne bought the properties specifically to generate a loss for tax purposes.
 
 
 14
 Implicit in the district court's opinion is a rejection of this argument. Burdette's argument lacks a firm factual basis. One of Biscayne's principals testified: "I have office buildings, apartment houses. I have plenty of tax shelter. I came into this deal for income. I invested my money to get a return on my invested capital. I was not interested in the oil business as a tax shelter." (Vol. 12, T 158-59) The testimony of the other principal was ambivalent. He conceded that he "expected to get some tax benefits of a significant nature" (Vol. 11, T 122), but he also said "[w]e were more in an exploratory situation there, and we didn't evaluate the deal from a tax standpoint." (Vol. II, T 132). Moreover, Randall dealt with tax benefits derived from a tax shelter, but the court did not allow this feature of the transaction to color its understanding of the general principles of rescission.
 
 
 15
 The pertinence and common sense of the Supreme Court's analysis is demonstrated by the district court's opinion in the case before us.
 
 
 16
 The district court observed that "money returned to Biscayne by way of restitution would constitute income to Biscayne and would flow through to the shareholders ..." slip op. at 4, App. 363. The district court quite properly did not speculate about the amount of tax this income would generate, because many presently unknown factors would have to be taken into consideration when Biscayne and its shareholders filed their returns. But whatever the tax, it would reduce Biscayne's tax benefit that Burdette claims as a setoff. The Supreme Court addressed a similar situation in Randall:
 
 
 17
 In any case, respondents' contention that plaintiffs will receive undeserved "windfalls" absent an offset for tax benefits is greatly overstated. Even if tax benefits could properly be characterized as a windfall--which we doubt--the tax laws will serve to reduce, although not necessarily to eliminate, the extent of plaintiffs' net economic gain as compared to the status quo ante. We are told that the "tax benefit rule" will apply in cases of rescission, thus making the recovery taxable as ordinary income. 478 U.S. at 663-64.
 
 
 18
 The Supreme Court of West Virginia recognizes that it is "immaterial that the status quo cannot be literally restored" in actions for rescission. Engeman v. Taylor, 46 W.Va. at 714, 33 S.E. at 940. In order to determine the amount of restitution Burdette must pay, the district court ascertained the total consideration paid to Burdette for the wells and leases and adjusted this amount by the net operating income Biscayne received. It restored the parties as nearly as possible to status quo. Principle and authority sustain its decision to exclude the setoff of tax benefits Burdette claims.
 
 III
 
 19
 When Burdette sought to introduce evidence about the cost of capping wells, removing pipelines, and restoring the site to comply with West Virginia law, the district court sustained Biscayne's objection. After the evidence was excluded, Burdette did not vouch what it would be, by affidavit or otherwise. In a posttrial offer of proof, Burdette suggested the cost would be $10,000 per well, but the offer of proof did not state how this cost was derived or how many wells were involved.
 
 
 20
 The standard of review for a district court's evidentiary ruling is abuse of discretion. United States v. Whitfield, 715 F.2d 145, 147 (4th Cir.1983). Applying this standard, we find no cause for reversal. Burdette did not list in the pretrial order any expert to testify about the necessity and cost of bringing the field into compliance with West Virginia law. The witness, Michael Burdette, did not qualify as an expert on the subject. Moreover, as Biscayne points out, any costs for capping wells and renovating the site would have been incurred by Burdette if the parties had never entered into the contract of sale. Undoubtedly the testimony Burdette sought to introduce about costs it would have to bear was speculative. The district court did not abuse its discretion in excluding testimony on this subject.
 
 IV
 
 21
 The district court awarded 6% prejudgment interest and 10% postjudgment interest on the amount Burdette must pay in restitution. On remand the district court ruled that the postjudgment interest should commence on the date of the initial judgment. Burdette objected and asserted that postjudgment interest should run from the date of the amended judgment on remand. The district court overruled the objection and denied Burdette's motion to amend. The amount involved is considerable, since the initial judgment was entered November 8, 1984, and the amended judgment on remand was entered June 29, 1990.
 
 
 22
 In addition to opposing Burdette's request that interest run from the amended judgment, Biscayne argues that the district court erred by not awarding postjudgment interest of 10.33%, the applicable treasury bill rate on November 8, 1984, computed daily and compounded annually, as specified in 28 U.S.C. § 1961.
 
 
 23
 Biscayne, however, did not file a cross-appeal for the error it now alleges. An appellee can urge support of a judgment by relying on any matter in the record, but it cannot seek reversal when it has not cross-appealed. LeTulle v. Scofield, 308 U.S. 415, 421-22 (1940). We dismiss Biscayne's assignment of error and turn to Burdette's.
 
 
 24
 Both parties agree federal law governs this issue, but the applicable federal statute merely states postjudgment "interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961. The circuits differ over when postjudgment interest attaches if the appellate court vacates a judgment for the plaintiff and the plaintiff then wins a second judgment in the district court. See Chattem, Inc. v. Bailey, 486 U.S. 1059, 1060 (1988) (White, J., dissenting from denial of cert.). Justice White's dissent canvasses the opinions of the courts of appeals, identifying those that narrowly read § 1961. These courts hold that the statutory phrase "date of the entry of the judgment" cannot refer to a judgment vacated on appeal. It can only refer to the judgment entered on remand. 486 U.S. at 1060.
 
 
 25
 In contrast are the cases also cited by Justice White that give a broader meaning to the statute. These cases hold that to effect the purposes of § 1961 a prevailing plaintiff should be awarded postjudgment interest from the date of the original judgment. 486 U.S. at 1060-61.
 
 
 26
 Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570 (1990), is instructive but not dispositive. Significantly, the Supreme Court did not construe § 1961 to mean that postjudgment interest should run only from the date of the second judgment. Nor did it hold as a matter of law that a prevailing plaintiff was entitled to postjudgment interest from the date of the first judgment. Instead it looked to the purpose of the statute, which it described as follows: " '[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.' " 110 S.Ct. at 1576 (citation omitted). It then concluded that since the original judgment was set aside because it was not supported by the evidence, that judgment could not provide the date for the commencement of postjudgment interest. Consequently, the Court held that postjudgment interest should run from the date of the second judgment. 110 S.Ct. at 1576.
 
 
 27
 In accordance with Kaiser, we will not accept a narrow reading of the statute that fixes the date for the commencement of postjudgment interest as a matter of law. Instead, we will look to the reason for, and the extent of, the modification of the original judgment on remand. This approach to the question is consistent with other cases that eschew a narrow reading of § 1961, although it is difficult from these precedents to draw a bright line rule. For example, in Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 737-38 (10th Cir.1987), the court approved computing postjudgment interest from the date of the original judgment, because there were no basic liability errors and, although the monetary difference in the judgments was large, it was "a matter of degree." 818 F.2d at 737. Bailey v. Chattem, Inc., 838 F.2d 149 (6th Cir.1988), prescribes the following inquiry to determine the equitable date for the commencement of postjudgment interest:
 
 
 28
 Determining the "equity of the statute" in a case like this requires an inquiry into the nature of the initial judgment, the action of the appellate court, the subsequent events upon remand, and the relationship between the first judgment and the modified judgment.
 
 
 29
 838 F.2d at 154. See also Perkins v. Standard Oil Co., 487 F.2d 672, 674-76 (9th Cir.1973); Clifford v. M/V Islander, 882 F.2d 12, 15 (1st Cir.1989) (dictum).
 
 
 30
 In this case, we affirmed the rescission and reconveyance adjudicated by the district court. We remanded for the district court to determine whether Burdette was entitled to a setoff arising out of Biscayne's operation of the wells and its tax benefit. The adjustments that the district court made to its initial award resulted in a $10,549 reduction, or only 1.6% of the original award.
 
 
 31
 In view of our prior affirmance of the district court's disposition of the basic issues, and of the minimal modification on remand, we conclude that the district court did not err in commencing postjudgment interest on the date of its original judgment. Finally, we are not persuaded that the postjudgment interest should be reduced because the proceedings in the district court took a long time. Burdette had the use of Biscayne's money throughout this lengthy controversy.
 
 No. 90-2467 (merits): AFFIRMED
 
 32
 No. 91-2333 (supersedeas issue mooted by agreement): DISMISSED.
 
 
 33
 K.K. HALL and SPROUSE, Circuit Judges, joined.