November 9, 1995 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1469

PAUL S. DOPP,
Plaintiff, Appellant,

v.

JAY A. PRITZKER,
Defendant, Appellee.



ERRATA SHEET ERRATA SHEET

The opinion of this court issued on October 26, 1995, is
corrected as follows:

On cover sheet change "Mahoney" to "Mahony"

October 26, 1995 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1469

PAUL S. DOPP,
Plaintiff, Appellant,

v.

JAY A. PRITZKER,
Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge] 



Before

Selya and Boudin, Circuit Judges, 

and Saris,* District Judge. 



Roger R. Crane, Jr., with whom Todd B. Marcus and Bachner, 
Tally, Polevoy & Misher LLP were on brief, for appellant. 
Gael Mahony, with whom Frances s. Cohen, Joshua M. Davis, 
Hill & Barlow, Salvador Antonetti-Zequeira, and Fiddler, Gonzalez 
& Rodriguez were on brief, for appellee. 






*Of the District of Massachusetts, sitting by designation.

SELYA, Circuit Judge. This case comes to us not as a SELYA, Circuit Judge. 

stranger. Following a jury verdict finding the defendant, Jay A.

Pritzker, liable to his erstwhile partner, plaintiff Paul S.

Dopp, in the sum of $2,000,000, the district court disposed of

several post-trial motions. See Dopp v. HTP Corp., 755 F. Supp. 

491 (D.P.R. 1991) (Dopp I). On appeal, we upheld the liability 

verdict but vacated both the jury's damage award and the trial

court's rulings in connection with equitable relief. See Dopp v. 

HTP Corp., 947 F.2d 506 (1st Cir. 1991) (Dopp II). The district 

court then conducted a second trial to determine Dopp's

entitlement to various forms of redress. The jury returned a

series of special findings and the district court entered a

revised judgment. See Dopp v. HTP Corp., 831 F. Supp. 939 

(D.P.R. 1993) (Dopp III). 

Both sides expressed dismay with the revised judgment.

After hearing a gaggle of appeals, we affirmed the district

court's denial of a resultory remedy; upheld the jury's award of

full damages (originally, $17,000,000) on condition that the

plaintiff remit the excess over $14,171,962; ordered a limited

new trial absent a remittitur; and set aside the sanctions that

the district court had imposed pursuant to P.R. Laws Ann. tit.

32, app. III, R.44.1(d) & 44.3(b) (1984 & Supp. 1989). See Dopp 

v. Pritzker, 38 F.3d 1239 (1st Cir. 1994) (Dopp IV). These 

rulings necessitated a remand.

Our warning that this seemingly endless litigation

showed signs of having "taken on a life of its own," id. at 1255, 

3

proved prophetic. When the parties returned to the district

court, the wrangling continued. Judge Pieras issued a battery of

orders in an effort to close the case. Dopp now appeals. He

strikes six separate chords. We write somewhat sparingly,

confident that the reader who hungers for more detail will find

no shortage of it in earlier opinions.

First: On remand, Dopp beseeched the district court to First: 

add prejudgment interest to the damage award. The court refused

to do so. Dopp assigns error. We see none.

This is "a diversity case in which the substantive law

of Puerto Rico supplies the basis of decision." Dopp IV, 38 F.3d 

at 1252. Thus, a federal court must give effect to Rule 44.3(b)

of the Puerto Rico Rules of Civil Procedure. Under that rule, if

a plaintiff recovers money damages and the court finds the

defendant to have been guilty of obstinacy, the court must then

add prejudgment interest to the verdict. See id.; see also De 

Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 126 

(1st Cir. 1991); Fernandez v. San Juan Cement Co., 118 P.R. Dec. 

713 (1987).

Here, however, there is no basis for a finding of

obstinacy. See Dopp IV, 38 F.3d at 1253-55. Accordingly, when 

Dopp, in the aftermath of our latest opinion, asked the lower

court to add prejudgment interest, the court demurred. It ruled

that, absent obstinacy, Puerto Rico law furnished no other

vehicle by which a court as opposed to a jury or other

4

factfinder could impose prejudgment interest in a case of this

genre.1 We agree: where prejudgment interest is available

under Puerto Rico law, the Civil Code expressly so provides.

See, e.g., P.R. Laws Ann. tit. 31, 3025, 3514; P.R.R. Civ. P. 

44.3(b). Here, Dopp points to no provision in the Civil Code

authorizing the add-on that he seeks. The absence of any such

provision is, as the district court recognized, fatal to Dopp's

claim.

Second: In a related vein, Dopp contends that the Second: 

district court should have acted ex cathedra, as it were, and 

increased the dollar amount of the verdict to reflect delay in

payment. This contention is triply flawed.

In the first place, Dopp rests his argument primarily

on a statute that he did not mention below.2 Yet, "[i]f any

principle is settled in this circuit, it is that, absent the most

extraordinary circumstances, legal theories not raised squarely

in the lower court cannot be broached for the first time on
 

1At the time of the second trial, the jury was not
instructed to consider the time value of money as an element of
Dopp's damages, and Dopp did not preserve an objection to the
omission of such an instruction. He has, therefore, foreclosed
that avenue. See Toscano v. Chandris, S.A., 934 F.2d 383, 384-85 
(1st Cir. 1991).

2The statute, P.R. Laws Ann. tit. 31, 7, provides in
pertinent part:

When there is no statute applicable to
the case at issue, the court shall decide in
accordance with equity, which means that
natural justice, as embodied in the general
principles of jurisprudence and in accepted
and established usages and customs, shall be
taken into consideration.

5

appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, 

Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 

1992). The circumstances here are not out of the ordinary. To

seal the bargain, Dopp offered no argumentation based on this

statute in his opening appellate brief. It is hornbook law that

an argument omitted from an appellant's opening brief is deemed

waived, notwithstanding its belated emergence in the reply brief.

See, e.g., Sandstrom v. Chemlawn Corp., 904 F.2d 83, 87 (1st Cir. 

1990).

In the second place, this argument is barred by the so-

called mandate rule. In attempting to sustain the $17,000,000

damage award, Dopp asserted a variety of theories that he claimed

justified the higher award. See Dopp IV, 38 F.3d at 1248-51. We 

rejected his asseverations. Under the mandate rule which

provides in substance that "[a] decision of an appellate tribunal

on a particular issue, unless vacated or set aside, governs the

issue during all subsequent stages of litigation in the nisi

prius court, and thereafter on any further appeal," United States 

v. Rivera-Martinez, 931 F.2d 148, 150 (1st Cir. 1991), cert. 

denied, 502 U.S. 862 (1992) Dopp is precluded from relitigating 

the point. The bar erected by the mandate rule remains firm

despite the fact that a party, the second time around, drapes his

contention in slightly different garb. See United States v. 

Bell, 988 F.2d 247, 250-51 (1st Cir. 1993); see also United 

States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993) (explaining that 

interests of consistency and judicial economy dictate that

6

litigants not be allowed "[s]erial bites at the appellate

apple").

In the third place, the Puerto Rico Supreme Court has

never applied section 7 in the manner that Dopp suggests, and

none of the Puerto Rico cases that he cites indicate that the

commonwealth's courts would be willing to take such a lengthy

stride in a contract case based on a commercial transaction gone

sour.3 Having in mind that Dopp chose the federal forum, the

lack of precedent sounds a death knell for his claim. See Martel 

v. Stafford, 992 F.2d 1244, 1247 (1st Cir. 1993) (explaining that 

a plaintiff who opts for a "federal forum in preference to an

available state forum may not expect the federal court to steer

state law into unprecedented configurations"); Porter v. Nutter, 

913 F.2d 37, 41 (1st Cir. 1990) (similar); Kassel v. Gannett Co., 

875 F.2d 935, 949-50 (1st Cir. 1989) (similar).

Third: Dopp insists that the district court should Third: 

have permitted him to decide anew whether he would accept the

remittitur after it had denied his motions for prejudgment

interest and enhancement of the verdict. We think not. On

remand, Dopp faced a simple choice: he could take his chances on

 

3Dopp relies principally on two cases. The first, Rojas v. 
Maldonado, 68 P.R. 757 (1948), is a wrongful death action dealing 
with the measurement and translation of a bereaved parent's
suffering into money damages. The case has no application to
contract damages (which, under Puerto Rico law, are to be
measured as of the date of the actionable breach). Dopp's second
offering, Suro v. E.L.A., 111 P.R. Dec. 564 (1981), is also a 
wrongful death action. It deals with how a court should measure
a decedent's lost future earnings. See id. at 569-70, 574-75. 
The Suro opinion has no relevance to the issue at hand. 

7

another trial or he could accept the remittitur and have judgment

entered in the reduced amount. The district court supportably

found that Dopp elected the latter course. This finding is

reviewable only for abuse of discretion. See De Leon Lopez, 931 

F.2d at 120 n.3. Given Dopp's serial filings in the district

court, we discern no hint of abuse either in the finding that he

elected the remittitur or in the timing of his election.

Fourth: Money judgments in federal civil actions Fourth: 

ordinarily carry postjudgment interest until paid, see 28 U.S.C. 

1961(a),4 and the parties who agree on little else agree

that this case comes within the statute's sweep. Not

surprisingly, there is a rub: Dopp seeks postjudgment interest

on the first $2,000,000 in damages not from December 13, 1993

(the date on which the district court entered judgment on the

more recent jury verdict) but from March 23, 1990 (the date on

which the district court entered judgment on the initial jury

verdict). He has no such entitlement.

The relevant facts are as follows. The first trial

resulted in a jury verdict of $2,000,000, and the district court

entered judgment in that amount. We vacated the judgment in all

"its relief-related aspects." Dopp II, 947 F.2d at 520. The 
 

4The statute reads in relevant part:

Interest shall be allowed on any money
judgment in a civil case recovered in a
district court. . . . Such interest shall be
calculated from the date of the entry of the
judgment. . . . .

28 U.S.C. 1961(a) (1988).

8

parties then retried the case on damages and the jury awarded

Dopp $17,000,000 (later reduced to $14,171,962). Dopp theorizes

that postjudgment interest should accrue on the first $2,000,000

in damages from the date of the vacated judgment rather than from

the date of the larger judgment that was entered following the

second jury verdict. For his part, Pritzker maintains that

postjudgment interest should run only from the latter date.

The premier authority on this point is Kaiser Alum. & 

Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990). In Kaiser, 

following a jury verdict for the plaintiff, the district court

granted the defendant's motion for a new trial limited to the

issue of damages on the ground that the evidence did not support

the award. The second trial produced a larger verdict that

proved impervious to appellate review. Interpreting 28 U.S.C. 

1961(a), see supra note 4, the Supreme Court concluded that 

postjudgment interest on the entire award should be calculated

from the entry of the second judgment. The Court reasoned that,

when a damage award is "not supported by the evidence, the

damages have not been ascertained in any meaningful way." Id. at 

836. In such circumstances, "[i]t would be counterintuitive, to

say the least, to believe that Congress intended postjudgment

interest to be calculated from such a judgment." Id. 

Kaiser controls here. The first trial yielded a 

verdict from which we found it "[i]mpossible . . . to determine

what sort of damages the jurors thought they were awarding or how

they arrived at the stated figure of $2,000,000." Dopp II, 947 

9

F.2d at 513. In other words, the judgment, like the current

crush of tabloid stories recounting Elvis sightings, lacked any

visible means of support. These indicia are characteristic of

cases in which postjudgment interest can only accrue from the

date of the second judgment. See Cordero v. De Jesus-Mendez, 922 

F.2d 11, 16 (1st Cir. 1990) (explaining that, when the first

judgment is not "basically sound" and "lacks an evidentiary or

legal basis," postjudgment interest should run only from the date

of the second judgment).

We need not beat this drum incessantly. As we

indicated at the time, the first judgment was so riddled with

uncertainty that we could not "decipher the character of the

damage award." Dopp II, 947 F.2d at 514. We confessed our 

inability to divine whether the sum awarded by the jury

represented full or accessory damages; what election of remedies,

if any, the plaintiff had made; and the extent to which the

verdict represented inconsistent or duplicative remediation. See 

id. at 515-16. The lack of clarity that marked the first 

judgment, coupled with our determination that all the

participants had a hand in producing the chaos, see id. at 516, 

suggests that the damages were not ascertained in a meaningful

way in March of 1990. One simply cannot say on this scumbled

record either that the evidence supported the initial judgment on

damages or that the second judgment was a mere modification of

the first.

Dopp seeks to avoid this result by reliance upon Bailey 

10

v. Chattem, Inc., 838 F.2d 149, 153-55 (6th Cir.), cert. denied, 

486 U.S. 1059 (1988). The Bailey court decided, on specific 

facts, that where the damages found in a second trial include a

lesser amount found by the jury in the first trial, postjudgment

interest on the lesser amount may run from the date of the

original judgment. See id. at 154. Assuming, arguendo, that 

Bailey's reasoning survives the Court's subsequent decision in 

Kaiser a matter on which we take no view the opinion is of no 

assistance to Dopp's cause. In Bailey, unlike in this case, the 

first judgment was precise in terms of exactly what the money

damages represented, and it was vacated only because the court of

appeals found the trial judge's instruction on a particular

element of damages to be inadequate. See id. Apart from the 

errant instruction, it was crystal clear what the evidence had

proven with regard to the defendant's liability, what remedies

were being sought, and what damages were in fact determined to be

due.5

Of course, it is possible that this court could hark

back to the jury's original verdict, speculate about what

actually had been determined, and surmise, in light of human
 

5To supplement Bailey, Dopp hawks a string of Tenth Circuit 
cases that stress the importance, in applying section 1961(a) to
serial judgments, of assessing the extent to which the original
judgment has been reversed. See, e.g., Northern Natural Gas Co. 
v. Hegler, 818 F.2d 730, 737 (10th Cir. 1987), cert. dismissed, 
486 U.S. 1063 (1988); Ashland Oil, Inc. v. Philips Petroleum Co., 
607 F.2d 335, 336 (10th Cir. 1979), cert. denied, 446 U.S. 936 
(1980). These cases afford Dopp scant succor. Here, even though
we upheld the jury's liability determination, we found the
initial damage award to be completely inscrutable and vacated it
entirely.

11

experience, what the jury was saying about the harm caused by

Pritzker. Later, with the benefit of hindsight informed by a

retrial, a second appeal, and countless legal maneuverings, we

could attempt to peel off the layers of litigation and return to

the starting place with some better inkling of what that long-ago

verdict might have meant. But reasoning backward is not our

proper function. The hallmarks of the first judgment were

ambiguity and uncertainty, and Dopp has not produced any

dependable means of dispelling the mist. Because the damages

were not ascertained in any meaningful way by the first jury,

postjudgment interest runs only from the date of the second

judgment.

Fifth: Dopp's next point implicates his former Fifth: 

counsel, the law firm of Ledesma, Palou & Miranda (LP&M). LP&M

represented Dopp pursuant to a contingency fee agreement (the

Agreement) throughout the protracted litigation between Dopp and

the Pritzker interests. Under the Agreement, LP&M was to receive

25% of "all amounts recovered" in the litigation. Following the

second jury verdict, the district court indicated that, if Dopp

elected full damages as his anodyne of choice, the court might

"enter a Judgment which will include the payment of attorneys'

fees to [LP&M]." Dopp III, 831 F. Supp. at 959 n.30; see also 

id. at 960 n.31. Although this suggestion slipped from sight 

during the ensuing appeal, it proved to be a harbinger of things

to come.

We issued our opinion in Dopp IV on October 28, 1994. 

12

A petition for rehearing consumed some additional time. Our

mandate then issued. On February 10, 1995, Dopp, through LP&M,

filed a motion in the district court. In it, he acknowledged the

lid that this court had placed on full damages ($14,171,962),

calculated the portion of the award that Pritzker was entitled to

extinguish by reason of certain litigated credits,6 and prayed

that the district court order immediate payment of the net amount

remaining. The motion included, as part of an intricate

explanation concerning how best to calculate the litigated

credits, a line item in the amount of $3,542,990.50 a figure

equal to 25% of the reduced award of full damages labelled

"Ledesma, Palou & Miranda." On March 10, 1995, the district

court entered a final judgment which, among other things,

purported to deduct $3,542,990.50 from Dopp's recovery and to

redirect that amount to LP&M.

In the meantime, trouble erupted in paradise. On March

14, LP&M, despite having done yeoman work for Dopp, moved for

leave to withdraw as his counsel. Dopp, acting pro se,

simultaneously filed a pleading signifying his desire to drop

several pending motions (including the motion for immediate

payment). The district court granted LP&M's motion to withdraw,

but denied Dopp's omnibus pleading as moot, stating that the

March 10 judgment "addressed all pending issues."
 

6We discussed the complicated questions surrounding the
litigated credit issue at some length in Pritzker v. Yari, 42 
F.3d 53, 65-74 (1st Cir. 1994), cert. denied, 115 S. Ct. 1959 
(1995). It would serve no useful purpose to rehearse that
discussion here.

13

Dopp assigns error to the portion of the final judgment

that earmarks funds for LP&M. In his view, the direction for

payment is unconstitutional because LP&M is not a party to the

action, and any judgment purportably rendered for or against a

non-party is void.

We need not probe this point too deeply. The fees

claimed by LP&M are hotly disputed (earlier this year, LP&M sued

Dopp for payment in a separate suit that is currently pending

before a different judge of the district court), the court below

made no findings to underbrace the direction for payment (we

cannot tell, for example, what the court knew of the fee dispute,

or the basis on which it resolved any controversy), and the court

offered no rationale for its order.7 Moreover, LP&M has not

intervened in this action and the district court has not

appropriately asserted in personam jurisdiction over it. 

These omissions cast a pall over the court's order.

The tenet is that remand is required when a district court offers

no explanation of a ruling, makes no findings, and the basis for

the ruling cannot confidently be discerned on appeal. See, e.g., 

Pearson v. Fair, 808 F.2d 163, 165 (1st Cir. 1986) (per curiam); 

see also Domegan v. Fair, 859 F.2d 1059, 1066 (1st Cir. 1988) 

(warning that, without any explication of a trial judge's

 

7It is possible, of course, that Dopp lured the district
court into following this course by inserting the line item in
his motion for payment. See supra p. 12. Even if this were so, 
however, we would not find an estoppel because the motion for
payment was crafted by the beneficiary of the direction for
payment, LP&M, then acting as Dopp's counsel.

14

reasoning, the court of appeals is "sometimes forced to remand in

order to apprehend the basis for decision below"). Here at a

bare minimum, several things must happen before we can

intelligently review the propriety of the direction for payment.

First, the law firm must intervene in the action or otherwise

assert a claim of right to a portion of the judgment (say, by

garnishment or impressment of a lien). Second, Dopp must be

given notice and an opportunity to contest the law firm's

claim.8 If, after these two things have been accomplished, the

court concludes that a direction for payment is proper, it must

set forth specific findings and elucidate its ratio decidendi. 

Since none of these essential ingredients have yet been prepared,

we vacate the direction for payment and remand to the district

court for further proceedings limited to that issue.9

Sixth: Last and least, Dopp asks us to pass upon the Sixth: 

bill of costs he submitted below. Because the district court to

our knowledge has not yet addressed that submission, Dopp's

request to this court is premature. See Mason v. Belieu, 543 
 

8We take no position on the merits of the fee dispute or on
the degree to which that dispute may or may not be susceptible to
resolution within the four corners of the instant case.

9Although the size of LP&M's fee arguably affects the amount
of at least one litigated credit and, thus, could conceivably
have an impact on Pritzker's net payment to Dopp, Pritzker did
not cross-appeal either from the trial court's allocation of a
sum certain to LP&M or from its computation of the litigated
credits. Before us, Pritzker maintains the same hands-off
attitude, stating that he "takes no position in th[e] dispute"
over the propriety of including LP&M within the judgment proper.
Appellee's Brief at 15 n.8. Thus, on remand, the district court
need not consider Pritzker's interests in its further treatment
of this issue.

15

F.2d 215, 222 (D.C. Cir.), cert. denied, 429 U.S. 852 (1976). 

We need go no further. The district court did not err

in determining that the award of full damages, as capped on

appeal, should not be augmented by the addition of prejudgment

interest or enhanced to reflect the delay in payment. Nor did

the court err in determining that the plaintiff made a valid and

binding election to accept the remedy of full damages and to

remit the excess of the award over $14,171,962. We, therefore,

affirm the court's rulings in these respects. At the same time,

we direct that postjudgment interest on the reduced award should

accrue, at the federal statutory rate, see 28 U.S.C. 1961(a), 

from December 13, 1993. Finally, we vacate the judgment insofar

as it calls for Pritzker to pay a portion of the proceeds

directly to LP&M, and we remand for further proceedings solely in

regard to that aspect of the matter. Costs on appeal shall be

taxed in favor of the appellee.

It is so ordered. It is so ordered. 

16