William B. HARDY, Plaintiff–Appellee,

v.

JOHNS–MANVILLE SALES CORPORATION, Defendant,

Fibreboard Corporation, et al., Defendants–Appellants.

Richard C. SMITH, Sr., Plaintiff–Appellee,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants–Appellants.

James M. DARTEZ, Plaintiff–Appellee,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants,

Fibreboard Corporation, et al., Defendants–Appellants.

Cecil A. OVERSTREET, Plaintiff–Appellee,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants,

Fibreboard Corporation, Armstrong World Industries, Inc., Celotex Corporation, Eagle–Picher Industries, Inc., Pittsburgh–Corning Corporation, Owens–Illinois, Inc., Keene Corporation, and Raymark Industries, Inc., Defendants–Appellants.

John David BURKE, Sr., Plaintiff–Appellee,

v.

JOHNS–MANVILLE SALES CORPORATION, et al., Defendants,

Owens–Illinois, Inc., et al., Defendants–Appellants.

Nos. 87–2002 to 87–2006.

United States Court of Appeals, Fifth Circuit.

Aug. 9, 1988.

---

**6.** While not treating the bad faith issue, we reiterate that a debtor's silence standing alone cannot amount to bad faith.

O.J. Weber, Robert A. Black, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Owens–Illinois Corp., Keene Corp., Fibreboard Corp.

George A. Weller, Beaumont, Tex., for Fibreboard Corp.

Gordon R. Pate, Beaumont, Tex., for Pittsburgh–Corning Corp.

Benckenstein, Norvell & Bernsen, Lipscomb Norvell, Jr., Beaumont, Tex., for Celotex Corp.

Michael B. Schwartz, Jeffrey B. McClure, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for Raymark Industries.

Robert E. Ballard, Grant Kaiser, Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, Lawrence Madeksho, Houston, Tex., for plaintiffs, appellees.

Before GARWOOD, and JONES, Circuit Judges, and HITTNER,* District Judge.

* District Judge of the Southern District of Texas, sitting by designation.

GARWOOD, Circuit Judge:

Defendants-appellants Armstrong World Industries, Inc., Raymark Industries, Inc. (Raymark), Keene Corporation (Keene), Celotex Corporation, Eagle–Picher Industries, Inc., Fibreboard Corporation, Owens–Illinois, Inc., and Pittsburgh–Corning Corporation (collectively, Armstrong) appeal the district court's judgments on the jury's verdict in favor of plaintiffs-appellees William B. Hardy, Richard C. Smith, Sr., James M. Dartez, Cecil A. Overstreet, and John David Burke, Sr. (collectively, the Hardy plaintiffs). We reverse.

## Facts and Proceedings Below

During 1981, the five individual Hardy plaintiffs commenced separate diversity actions against Armstrong seeking damages for exposure to asbestos. On September 8, 1986, the district court ordered these separate actions consolidated.[1] Trial before a jury began on November 17, 1986. The parties had stipulated that only three issues were to be submitted to the jury: (1) whether each plaintiff had an asbestos-related disease; (2) whether each plaintiff had been exposed to the products of the various defendants; and (3) the amount of damages each plaintiff was entitled to receive if the jury answered in the affirmative the first two special issues.

On the opening day of trial, the Hardy plaintiffs introduced in evidence an excerpt from an appellate brief that Raymark had filed in an Illinois declaratory judgment action seeking to establish that certain insurance coverage existed. Armstrong objected to the introduction in evidence of this excerpt on the ground that it was hearsay and not, as the Hardy plaintiffs contended, a prior inconsistent statement. The district court overruled this objection. On the following day, the Hardy plaintiffs introduced in evidence an excerpt from an appellate brief prepared by Keene in connection with a federal declaratory judg-

ment action in the District of Columbia that Keene had brought to establish certain insurance coverage. Armstrong objected to the admission in evidence of this excerpt on the grounds that it was not a prior inconsistent statement[2] and that it violated Fed. R.Evid. 403. The district court overruled this objection. In its charge, the district court instructed the jury, among other things, that the products of Armstrong were "defective and unreasonably dangerous." Following Armstrong's objection to this instruction, the district court recalled the jury and gave a curative instruction. Nonetheless, Armstrong made a motion for a mistrial, which the district court overruled.

On November 21, 1986, the jury returned a verdict awarding damages to the Hardy plaintiffs in amounts ranging from $436,-000 to $713,000. On November 25, 1986, the cases were severed and judgment entered in each of the five cases. On December 16, 1986, Armstrong filed a motion for judgment notwithstanding the verdict and a motion for new trial. On December 24, 1986, the district court denied these two motions. Armstrong then filed a notice of appeal in each of these five cases. These cases were subsequently consolidated for purposes of appeal.

## Discussion

Armstrong complains that the district court (1) erroneously admitted in evidence excerpts from appellate briefs filed by attorneys representing Raymark and Keene in litigation unrelated to the present litigation; (2) erroneously admitted in evidence over their objection an excerpt from a report prepared by the Occupational Safety and Health Administration of the United States (OSHA); (3) improperly instructed the jury that Armstrong's products were defective and unreasonably dangerous and abused its discretion in not granting Armstrong's motion for a mistrial on that

---

1. Two other actions were also consolidated with these five actions, but in those actions the parties settled. Accordingly, those two actions are not involved in this appeal.

2. In objecting to the admission of this excerpt in evidence, Armstrong advised the court that its remarks concerning the excerpt from the Raymark brief were equally applicable to this excerpt, namely, that the excerpt was hearsay and thus inadmissible.

ground; and (4) awarded excessive damages to the Hardy plaintiffs. Finding merit in Armstrong's first asserted error, we do not reach the others.

As noted above, the district court admitted both the Raymark appellate brief excerpt and the Keene appellate brief excerpt over Armstrong's objections that these excerpts were hearsay and thus inadmissible. Both of the suits in which the challenged appellate briefs were filed related to liability insurance coverage for asbestos claims; in neither suit were any of the plaintiffs below parties, nor did the suits specifically concern the claims, circumstances, exposures, or injuries of any of the plaintiffs. At trial, the Hardy plaintiffs urged that these excerpts were admissible either as prior inconsistent statements pursuant to Fed.R.Evid 801(d)(1)(A) (the Raymark excerpt) or as admissions pursuant to Fed.R. Evid. 801(d)(2) (the Keene excerpt). The Hardy plaintiffs no longer contend that any of these excerpts were properly admissible as prior inconsistent statements.[3] *See* Fed. R.Evid. 801(d)(1)(A). However, the Hardy plaintiffs do maintain that both of these excerpts were properly admitted as party admissions pursuant to Rule 801(d)(2).[4] We disagree.

 Although there is a well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party,[5] *see Continental Insurance Company of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir.1971), there is no similar authority that appellate briefs submitted by a party in one

action may be used against that party in a different action between others as evidentiary admissions of that party. There is a basic difference between the two situations. Trial court pleadings, at least to the extent that they are not hypothetical or in the alternative, generally constitute a statement by the pleader as to the occurrence of certain historical facts in the real world. However, appellate briefs, by their very nature, must confine themselves to making statements not about the facts as they unfolded in the real world, but about *what the trial court record shows.* Cf. 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 228.02 [2.–1] at 28–8 (2d ed. 1987). Appellate briefs may not properly purport to be statements of what the real world facts are, but must rather be statements of what the trial court record reflects. The distinction involved here is crucial. Because appellate briefs must of necessity refer to what the record reflects as distinguished from what the real world facts actually are, and because these two sets of facts are not necessarily identical (indeed, they may well diverge at crucial junctures), using statements about record facts as substantive evidence, *i.e.*, to establish the truth of the matter asserted in those statements, is bound to be uncertain in the best of circumstances and dangerously misleading in most others. Further, allowing in evidence, as party admissions, statements in appellate briefs has a special danger of creating jury confusion, because appellate briefs address the facts shown by the record below only as they are relevant to the specific legal questions presented by that particular appeal. The danger of con-

---

3. At the time that these two excerpts were offered in evidence, there had been no testimony by any declarant of the statements contained in these two excerpts, which is a prerequisite to the exercise of Rule 801(d)(1)(A).

4. It seems plain that under no theory could it be argued that the Raymark brief excerpt was admissible against any of the defendant-appellants other than Raymark, or that the Keene brief excerpt was admissible against any of the defendants-appellants other than Keene. However, this ground of objection was not urged below (nor was any limiting instruction requested), and it has not been urged on appeal. Thus we regard it as waived and we treat the matter

as if the briefs in question were filed by all defendants (which is substantially the way the objections were made below and have been urged on appeal).

5. There are some important exceptions to this rule. For example, when "inconsistent positions [are] taken in pleadings in a complicated joinder situation, involving ... the contingent liability of third parties, such pleadings may not be used as evidentiary admissions." *Continental Insurance Company of New York v. Sherman,* 439 F.2d 1294, 1298 (5th Cir.1971). *See also Douglas Equipment, Inc. v. Mack Trucks, Inc.,* 471 F.2d 222, 224–25 (7th Cir.1972).

fusion in this respect is especially great where, as here, the cases in which the briefs are filed are so different from that in which they are sought to be placed in evidence.

These are the same sorts of considerations that led us to limit the admissibility of third-party, contingent liability complaints. *See* note 5 *supra.* While we have found no cases dealing with the admissibility, as party admissions, of appellate briefs filed in other different actions between different parties, we conclude that, at least absent some highly unusual circumstances not present here, such briefs are not properly regarded as party admissions. *Cf. Taylor v. Allis–Chalmers Manufacturing Co.,* 320 F.Supp. 1381, 1384–85 (E.D.Pa.1969), *aff'd on opinion below,* 436 F.2d 416 (3d Cir.1970) (distinguishing between pleadings and trial court pretrial memoranda). We therefore hold that the district court abused its discretion in allowing the Raymark and Keene appellate brief excerpts to be introduced in evidence as admissions of a party-opponent pursuant to Rule 801(d)(2).

■ Having determined that admission in evidence of these two excerpts was error, we must next determine whether it affected Armstrong's substantial rights. *See* 28 U.S.C. § 2111; Fed.R.Evid. 103(a)(1); *cf.* Fed.R.Civ.P. 61 (substantial justice standard). *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2883 (1973 & Supp.1987). We cannot say with fair assurance that the verdict against Armstrong was not substantially swayed by the admission of this evidence. Both challenged excerpts contain statements that were quite damaging to Armstrong's contention in relation to the first special issue that mere exposure to asbestos does not necessarily result in "injuries [that] produce diseases almost immediately," which the Hardy plaintiffs had argued to the jury.[6] For example, the first excerpt begins:

"Asbestos-related diseases are progressive in nature, reflecting 'a continuing process of injury going on within the lungs which slowly builds up to the point where clinical signs of lung impairment become obvious either to the individual or to the physician.'

"Enormous quantities of asbestos fibers imbed permanently and indestructibly in the lungs, causing immediate, continuing and cumulative damage to the lung's cells and tissues."[7]

Similarly, the second excerpt states:

"The injury and disease process caused by asbestos inhalation starts virtually immediately. Persons with clinically diagnosed conditions, asbestosis, mesothelioma, and lung cancer, unquestionably are all characterized by a progressive injury occurring continuously after inhalation ceases.

"The medical evidence is clear that with respect to persons who have clinically manifested asbestos-related conditions:

"A). Injury commences at or shortly after a claimants [*sic*] initial inhalation of asbestos fibers; and

"B). Injury progresses continuously after inhalation ceases."[8]

In our view, each excerpt was itself sufficiently damaging to have caused Arm-

---

**6.** Armstrong presented medical evidence that at least one plaintiff did not have asbestosis and that the conditions of the remaining plaintiffs were not progressive; its evidence also tended to show that the present conditions of the plaintiffs were not severely disabling. Several plaintiffs had a significant history of smoking. There was scant testimony of loss of earnings or prior medical expenses. The central thrust of the plaintiffs' cases was the likely *future worsening* of their conditions, including the development of cancer, and substantial likely large future medical expenses.

**7.** This is how the "excerpt" of the Raymark brief as admitted in evidence reads. The brief itself

actually commences the first sentence quoted in the above text—which is contained in the introductory portion of the "Argument" section of the brief—with the statement, "The trial court correctly found that." The second sentence quoted in the above text is from the same section of the brief, and in the brief itself the sentence actually commences with the statement, "The medical evidence overwhelmingly demonstrated that."

**8.** This is how the "excerpt" of the Keene brief as admitted in evidence reads. The first sentence quoted in the above text is from a portion of the brief entitled "The Medical Testimony," and in the brief itself this sentence actually begins with

strong prejudice. We also note that admitting in evidence these excerpts from appellate briefs filed in declaratory judgment actions seeking to establish insurance coverage was almost certain to have confused the jury with respect to the merits of the present personal injury damages actions. Given the prejudicial nature of this evidence under the circumstances of this case, and its substantial potential to engender confusion among the jurors, we find it impossible to conclude that Armstrong's substantial rights were likely not affected by the admission of the challenged excerpts. We therefore determine that the judgments against appellants must be reversed and remanded for a new trial.

### Conclusion

Accordingly, the judgments against appellants are reversed, and each of the causes is remanded for a new trial.

REVERSED and REMANDED.

the statement that Dr. Kagan, a professor at Georgetown University called by Keene, "testified that" (and at the end of the sentence record page citations are given in the brief itself). The second sentence quoted in the above text is from the same portion of the brief, and in the brief itself actually commences with the statement, "Dr. Kagan also testified that, as to" (and in the brief itself it is also followed by record page citations). The third sentence quoted in the above text is from the "Argument" section of the brief, and in the brief itself this sentence actually commences, "As found by the District Court, J.A. IX at 3534," (and in the brief itself clauses (A) and (B) are each footnoted with several citations to pages of the record).