Scott MARTEL, Plaintiff, Appellant,

v.

George F. STAFFORD, Administrator,
etc., et al., Defendants, Appellees.

No. 92–2286.

United States Court of Appeals,
First Circuit.

Heard April 9, 1993.

Decided May 25, 1993.

Kenneth J. Chesebro, Cambridge, MA, with whom Robert E. Manchester, Patricia S. Orr, and Manchester Law Offices, P.C., Burlington, UT, were on brief, for plaintiff, appellant.

Christopher S. Williams, with whom Griffin & Goulka, Boston, MA, was on brief, for defendants, appellees.

Before BREYER, Chief Judge, SELYA and STAHL, Circuit Judges.

SELYA, Circuit Judge.

This appeal could do double duty as a law school examination question. It follows a district court's dismissal of the third action brought by plaintiff-appellant Scott Martel in what has been a consistently unsuccessful effort to stay in court long enough to recover damages for personal injuries sustained in an automobile accident. Because the district court lacked personal jurisdiction over the sole defendant, a foreign executor sued as such, we affirm.

## I. BACKGROUND

Leaving to one side the seepage from the geographical morass in which this case is mired, the prefatory facts are straightforward. On April 18, 1985, an accident occurred on a Vermont highway. Martel, a Vermont resident, sustained injuries when an automobile in which he was riding collided with a vehicle driven by Wilhelmina S. Parker. Parker, a citizen of Maryland who was in the process of moving into a new home in Vermont, perished two days later as an aftermath of the crash. She died testate, owning property located exclusively in Maryland and Vermont. Pursuant to her will, probate courts in both jurisdictions appointed George F. Stafford, a Massachusetts resident, as executor. Letters of administration were issued to Stafford in Maryland on May 22, 1985 and letters testamentary were issued to him in Vermont on August 19, 1985.

Martel seemed to be in no particular hurry to assert his rights. It was not until April 18, 1988 that he brought identical suits against Stafford in a Vermont state court and in Vermont's federal district court. In due course, each court dismissed Martel's complaint as time-barred on the ground that the

applicable statute of limitations pretermitted the action. *See* Vt.Stat.Ann. tit. 12, § 557(a) (1973) (providing that actions against an executor for acts of the decedent are barred if not commenced within two years of the issuance of letters testamentary).

Undeterred, appellant went in search of a longer statute of limitations.[1] On November 22, 1988, he filed a diversity action in the United States District Court for the District of Massachusetts. Over two years later, Stafford moved for summary judgment on a bouillabaisse of grounds, including statute of limitations, res judicata, absence of personal jurisdiction, and forum non conveniens. The district court granted the motion on the basis of res judicata, but offered no elaboration. This appeal ensued.[2]

## II. ANALYSIS

While the district court invoked the doctrine of res judicata, we are free to affirm the judgment below on any independently sufficient ground made manifest by the record.[3] *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990); *Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 860–61 (1st Cir.1987); *Chongris v. Board of Appeals*, 811 F.2d 36, 37 n. 1 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). When, as now, a potential jurisdictional defect rears its ugly head, an appellate court should not hesitate to scrutinize that defect before proceeding further. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir.1991) (stating that "courts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action"). Because jurisdiction is the most natural and obvious starting point here, and because the district court's rationale strikes us as problematic—the general rule is that a dismissal on limitations grounds does not bar the claim generally, but only bars a second action in

---

1. Appellant also appealed the superior court's entry of judgment, but to no avail. *See Martel v. Stafford*, 157 Vt. 604, 605–06, 603 A.2d 345, 346 (1991) (affirming dismissal of Vermont action).

2. During the pendency of the proceedings, Stafford died and Marilyn S. Elias, the executrix of Stafford's estate, became a party-defendant in this action. *See* Fed.R.Civ.P. 25(a)(1); Fed. R.App.P. 43(a). Because Elias's arrival on the

scene has no bearing on the disposition of this appeal, we refer to Stafford as if he were still alive and still the sole defendant.

3. This option has particular utility in the summary judgment context, as a district court's entry of summary judgment entails plenary appellate review. *See, e.g., Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

the same jurisdiction or in a jurisdiction that would apply the same statute of limitations, *see, e.g.,* 18 Charles A. Wright et al., *Federal Practice & Procedure* § 4441, at 366 (1981)— we tackle the jurisdictional issue first.

## A. *Personal Jurisdiction over an Executor.*

██ Plaintiff sued only one defendant—Stafford—and sued him solely in his capacity as executor of Parker's estate.[4] With exceptions not pertinent here, the Civil Rules provide that the law of the forum state determines a representative party's capacity to sue or be sued in a federal district court. *See* Fed.R.Civ.P. 17(b); *see also* 6A Charles A. Wright et al., *Federal Practice & Procedure* § 1565, at 473 (2d ed.1990). Thus, Massachusetts law governs the determination of whether the district court could lawfully exercise personal jurisdiction over Stafford *qua* executor.

██ The traditional Massachusetts rule has been that an executor or administrator appointed in another state—we shall use the generic term "foreign executor"—is not subject to suit in Massachusetts unless a statute dictates to the contrary. *See, e.g., Saporita v. Litner,* 371 Mass. 607, 614, 358 N.E.2d 809 (1976); *Old Colony Trust Co. v. Clarke,* 291 Mass. 17, 23, 195 N.E. 758 (1935); *Brown v. Boston & Me. R.R.,* 283 Mass. 192, 195, 186 N.E. 59 (1933); *Borden v. Borden,* 5 Mass. 67, 76–77 (1809); *see also Gallup v. Gallup,* 52 Mass. 445, 447 (1846) (holding that a foreign executor cannot sue in Massachusetts); *Langdon v. Potter,* 11 Mass. 313, 313–14 (1814) (same). The rule stems from the concept that a decedent's personal representative is a creature of the state which appointed him or her, and, as such, possesses no power to act beyond the creator's boundaries. *See Saporita,* 371 Mass. at 615; *Brown,* 283 Mass. at 195; *see also Derrick v. New England Greyhound Lines, Inc.,* 148 F.Supp. 496, 497 (D.Mass.1957) (dismissing action against foreign executor on the ground that "even if he were present and served he represents the estate only to the extent of his

Connecticut appointment, i.e., not at all, as [the appointment] has no extraterritorial effect").

The traditional rule—like most traditional rules—is not without exceptions. *See Saporita,* 371 Mass. at 615 (noting that "the rule has not been rigidly applied" and surveying certain common law exceptions). *Saporita* illustrates the point. There, a Massachusetts resident sued a foreign executor to recover payment for services rendered to the testator. The Massachusetts Supreme Judicial Court (SJC) approved a state court's exercise of personal jurisdiction over the executor, primarily because the testator had a wealth of contacts with Massachusetts. *See id.* at 618. Although *Saporita* and this case share a certain factual resemblance—in both instances, a foreign state appointed the executor according to the terms of the decedent's will, the foreign executor resided in Massachusetts and was thus subject to in-hand service of process there, and the decedent owned no real estate in Massachusetts—the two cases are more noteworthy for their dissimilarity than for their similitude.

In *Saporita,* the plaintiff lived and worked in Massachusetts. *See id.* at 612–13. The contract upon which she sued had been made and performed there. *See id.* Moreover, the testator's links with Massachusetts were pervasive; he resided and practiced medicine there, considered Boston to be his home, and spent approximately seventy-five percent of each week in the Commonwealth. *See id.* at 611–12. In the last analysis, it was the testator's contacts with Massachusetts that prompted the SJC to relax the traditional rule and find personal jurisdiction over the foreign executor. The court reasoned that, given contacts "sufficient . . . to allow the court to exercise personal jurisdiction over [the testator]," substituting an executor who, although appointed in a foreign jurisdiction, had himself lived and worked in Massachusetts and who had been served in hand there, would "not alter the court's jurisdiction." *Id.* at 618.

---

4. At one point in the proceedings, plaintiff sought to amend his complaint to name Stafford, individually, as a defendant. The court below denied the motion. On appeal, plaintiff does not assign error to this ruling.

■ The case before us is at a considerable remove. Despite ample time for pretrial discovery, the record discloses no relationship between the decedent and the forum state.[5] From aught that appears, Parker had not a single tie to Massachusetts. And, moreover, the cause of action arose out of state. Had Parker survived and Martel attempted to sue in the Commonwealth, there is not the slightest reason to believe that a Massachusetts court could have obtained jurisdiction over her person. Here, then, unlike in *Saporita*, allowing the suit to go forward based on the foreign executor's presence in Massachusetts would significantly alter the jurisdictional calculus.

■ We have said enough. Because the *Saporita* exception confers personal jurisdiction over a foreign executor only when the testator manifests sufficient contacts with Massachusetts to support the exercise of jurisdiction, not merely when the foreign executor is within the physical reach of a process server, Parker's behavioral patterns assume decretory significance. Because she forged no links of any kind with Massachusetts in her lifetime, her executor's Massachusetts residency cannot tilt the jurisdictional balance. And putting Stafford's residency aside, appellant has identified no other state-law basis for grounding personal jurisdiction. For our part, we can envision none.[6] Therefore, we must apply the traditional rule. Under it, Stafford, like the stereotypical foreign executor, is a nonentity, ergo, not amenable to suit beyond the boundaries of the state(s) of his appointment. Giving force to the Massachusetts cases and the policies behind them, we conclude that the district court lacked personal jurisdiction over Stafford *qua* foreign executor.

■ We add a small eschatocol. Absent some persuasive indication that a Massachusetts court would abandon its longstanding rule to find jurisdiction on these specific facts—an extremely dubious prospect given that the lawsuit's center of gravity obviously lies elsewhere[7]—we are not at liberty to manufacture a basis for ignoring the rule. We have repeatedly warned that a plaintiff who, like Martel, selects a federal forum in preference to an available state forum may not expect the federal court to steer state law into unprecedented configurations. *See, e.g., Catrone v. Thoroughbred Racing Ass'ns of N.A., Inc.,* 929 F.2d 881, 889 (1st Cir.1991); *Porter v. Nutter,* 913 F.2d 37, 41 (1st Cir. 1990); *Kassel v. Gannett Co.,* 875 F.2d 935, 949–50 (1st Cir.1989). While the SJC is free to reshape Massachusetts's judge-made law, we are not; rather, a diversity court, with exceptions not germane to this case, must take state law as it stands.

### B. Consent (Waiver).

Appellant argues that Stafford consented to the jurisdiction of a Massachusetts court, or, alternatively, waived his jurisdictional defense,[8] by means of statements contained in a

---

5. It is apodictic that a plaintiff bears the burden of proving facts necessary to establish jurisdiction. *See Donatelli v. National Hockey League,* 893 F.2d 459, 468 (1st Cir.1990). On such an issue, a party faced with a motion for summary judgment "must reliably demonstrate that specific facts sufficient to create an authentic dispute exist." *Garside,* 895 F.2d at 48; *see also Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 676–78 (1st Cir.1992) (discussing standards for determining motions to dismiss for want of personal jurisdiction that involve the court in weighing evidence); *General Contracting & Trading Co. v. Interpole, Inc.,* 899 F.2d 109, 115 (1st Cir.1990) (drawing analogy to Fed.R.Civ.P. 56 in connection with proving disputed jurisdictional facts). Thus, the absence of "relationship" evidence at the summary judgment stage weighs heavily against appellant. As we have observed before, a litigant is always chargeable with knowledge that his "decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence." *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991).

6. The other exceptions to the traditional rule, *see Saporita,* 371 Mass. at 615–17, are plainly inapposite, as are two state statutes authorizing jurisdiction over foreign executors upon a showing of sufficient decedent contacts with Massachusetts. *See* Mass.Gen.L. ch. 90, § 3A (1990); Mass.Gen.L. ch. 199A, § 9 (1990).

7. We think it unlikely that the SJC would fashion a new exception to an old and honored jurisdictional rule where, as here, the plaintiff is a nonresident, the decedent had no contacts with Massachusetts, the cause of action arose in another place, and no discernible state interest would be served by an assertion of jurisdiction.

8. Because the alleged conduct occurred beyond the confines of the present suit, the argument

brief filed in the United States District Court for the District of Vermont. There, the defendant, in response to plaintiff's threat to bring an action in Maryland's federal district court, speculated that, because of Stafford's Massachusetts residency, the proper fallback forum would be Massachusetts, not Maryland.

Appellant's basic premise is sound: a party may consent to a court's *in personam* jurisdiction before the commencement of an action. *See, e.g., National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 314–15, 84 S.Ct. 411, 413–14, 11 L.Ed.2d 354 (1964); *Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. 93, 95, 37 S.Ct. 344, 345, 61 L.Ed. 610 (1917); *Holloway v. Wright & Morrissey, Inc.,* 739 F.2d 695, 699 (1st Cir.1984). But, consent to personal jurisdiction cannot be said to have occurred here. The allegedly consenting words, buried, as they were, in a responsive argument to a speculative threat in a prior suit before a different court and concerning a matter unrelated to that suit's determination, dealt with a topic wholly separate from the issue of personal jurisdiction. Taken in context, the language to which plaintiff clings, quoted *verbatim* in the margin,[9] constituted no more than an assertion that, because an executor's residence controls for venue purposes, *see, e.g., Smith v. Harris,* 308 F.Supp. 527, 528 (E.D.Wis.1970), *venue* would likely lie in Massachusetts. Notwithstanding appellant's effort to muddle the two concepts, venue and personal jurisdiction are not the same. Pre-suit consent to a court's jurisdiction must be far more clear and unequivocal

than a passing remark directed to another subject. *Cf., e.g., National Equipment,* 375 U.S. at 314, 84 S.Ct. at 413 (equating consent with agreement to appoint an agent for service of process); *Petrowski v. Hawkeye–Security Ins. Co.,* 350 U.S. 495, 496, 76 S.Ct. 490, 490–91, 100 L.Ed. 639 (1956) (holding that defendant's stipulation submitting to jurisdiction waived any right to contest *in personam* jurisdiction); *Pennsylvania Fire Ins.,* 243 U.S. at 94–95, 37 S.Ct. at 344–45 (holding that a foreign corporation's registration to do business within a state constitutes consent); *General Contracting & Trading Co. v. Interpole, Inc.,* 940 F.2d 20, 23 (1st Cir.1991) (ruling that a plaintiff who purposefully avails himself of a particular forum surrenders jurisdictional objections to claims arising out of the same transaction that are brought against him in the same forum).

Furthermore, unlike, say, factual allegations in trial court pleadings, statements contained in briefs submitted by a party's attorney in one case cannot routinely be used in another case as evidentiary admissions of the party. *See Hardy v. Johns–Manville Sales Corp.,* 851 F.2d 742, 745 (5th Cir.1988); *cf. Fragoso v. Lopez,* 991 F.2d 878, 887 (1st Cir.1993) (holding that, in opposing summary judgment, a litigant may not rest upon freestanding allegations contained in a lawyer's brief). And although such statements may achieve binding force in highly unusual circumstances, *see Kassel,* 875 F.2d at 952 n. 17 (suggesting that specific factual statements contained in a *pro se* brief may be used in cross-examining the author), we discern no such circumstances here.[10]

---

may be more aptly phrased as involving "consent" rather than "waiver." We do not probe the point, however, for the distinction is immaterial in this situation. *See General Contracting & Trading Co. v. Interpole, Inc.,* 940 F.2d 20, 22–23 & n. 3 (1st Cir.1991).

**9.** The exact words Stafford's counsel used were: "venue might ... be proper in the U.S. District Court for the District of Massachusetts." Defendant's Response to Plaintiffs's Reply Memorandum, at 9 (July 26, 1988).

**10.** We think it is well to note that appellant has not claimed that the venue-related allusion caused any detrimental reliance. At any rate, such a claim would be bootless. Maryland generally views "the question as to which period of

limitations applies" as "a matter of procedural, not substantive, law." *Turner v. Yamaha Motor Corp., U.S.A.,* 88 Md.App. 1, 591 A.2d 886, 887 (1991). Thus, a court sitting in Maryland would apply Maryland's statute of limitations. By July 26, 1988 (the date when Stafford served the brief containing the controversial comment), Maryland's three-year statute of limitations for civil actions, *see* Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1992), had expired. Plaintiff has called no applicable tolling provision to our attention; and, furthermore, under applicable Maryland law, Martel would have had to present his claim against the estate within nine months after the date of the decedent's death. *See* Md.Est. & Trusts Code Ann. § 8–103(a)(1) (1991).

Having read the entire record with care, we find that it reveals no word, act, or omission that may properly be construed as consent to the jurisdiction of a Massachusetts court or as a waiver of any available defenses in that regard. To the contrary, defendant raised the jurisdictional objection in his answer and by motion, and in his briefs below and on appeal. Throughout, he made his point abundantly clear. It is a winning point, properly preserved, never abandoned, and sufficient to carry the day.

## III. CONCLUSION

We need go no further.[11] As Massachusetts has never recognized personal jurisdiction over a foreign executor on facts akin to those presented here, the action may not proceed.

*Affirmed. Costs to appellees.*

---

11. Since the jurisdictional issue is determinative, we take *no* view of the intriguing choice-of-law questions that lurk in the record or any of the other defenses Stafford advances.