Julian N. **Taman**, Pilar F. Lisua,
and the other heirs of
Felipe Fanama,
Plaintiffs/Appellants,
**v.**
**Marianas Public Land Corporation,**
Defendant/Appellee.
Appeal No. 94-0035
Civil Action No. 92-1490
July 21, 1995

Argued and Submitted July 7, 1995

Counsel for appellants: Reynaldo O. Yana, Saipan.

Counsel for appellee: Bret Lubic, Saipan (Law Office of Brian McMahon).

BEFORE: VILLAGOMEZ, Acting Chief Justice, ATALIG, Justice, and BELLAS, Special Judge.

ATALIG, Justice:

■ The plaintiffs, Julian N. Taman ("Julian"), Pilar F. Lisua ("Pilar"), and the other heirs of Felipe Fanama ("Felipe"), appeal from an order granting partial summary judgment in favor of the defendant Marianas Public Land Corporation ("MPLC"). The court concluded that Title Determination 766 ("TD 766"), in which title to Lot 648 was vested in the Trust Territory government, should be afforded administrative res judicata effect. This Court has jurisdiction pursuant to 1 CMC § 3102(a). We hold that the plaintiffs' claims are barred under the doctrine of res judicata and affirm on other grounds.

## ISSUE PRESENTED AND STANDARD OF REVIEW

■ The dispositive issue before us is whether the trial court erred in granting partial summary judgment in favor of MPLC under the doctrine of administrative res judicata.[1] Because this appeal is from a partial grant of summary judgment, certified for appeal pursuant to Com. R. Civ. P. 54(b), our review is de novo. *See Diamond Hotel Co., Ltd. v. Matsunaga*, 4 N.M.I. 213,

[1] The plaintiffs phrase the issues as: (1) whether the trial court erred in granting partial summary judgment in favor of the government on the issue of notice; and (2) whether the court erred in determining that the doctrine of res judicata barred the plaintiffs' claims with respect to the disputed land. These issues are not only interrelated but the former is dependant upon the latter.

216 (1995), *aff'd*, 99 F.3d 296 (9th Cir. 1996).

■ We view the evidence in the light most favorable to the nonmoving party, *Riley v. Public Sch. Sys.*, 4 N.M.I. 85, 87 (1994), and affirm if "there was no genuine issue of material fact and . . . the trial court correctly applied the substantive law." *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). We may also affirm a grant of summary judgment on other legal grounds where there are no genuine issues of fact pertaining to the newly relevant grounds. *See Palacios v. Trust Territory of the Pac. Islands*, 2 CR 256, 263 (N.M.I. Trial Ct. 1985), *aff'd*, 2 CR 904 (D.N.M.I. App. Div. 1986), *aff'd*, 838 F.2d 474 (9th Cir. 1988), *and* 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2716 (2d ed. 1983).

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs contend that Felipe owned several parcels of land on Saipan, one of which was Lot 648. Felipe had two children, Manuel Fanama ("Manuel") and Rufina Fanama ("Rufina"), both now deceased. Manuel had two children, Augustina Fanama ("Augustina") and Pilar. Augustina is now deceased. Rufina had two children, Juan F. Taman ("Juan") and Vicente F. Taman, both now deceased. Julian is Juan's son.

In 1952, Rufina and Hara Kikuo, a Japanese citizen, each filed a claim with the Land and Claims Office ("Claims Office") of the Trust Territory of the Pacific Islands ("TTPI") for approximately nine-and-one-half hectares located in Lot 648.[2] Subsequently, a Claims Office title officer issued a notice of a hearing to determine title to part of Lot 648, to be held October 16, 1953. Of Felipe's heirs, only Rufina received notice of the hearing. Rufina attended the hearing and testified that she had leased part of Lot 648, containing approximately nine hectares, to a Japanese national for a period of twenty years. *See* Appellants' Excerpts of Record at 20, 38-42.

On November 12, 1953, the Saipan District Land Office issued TD 766, which determined that all of Lot 648, containing approximately ten hectares, belonged to a Japanese national. Because of this determination, the land ceded to the TTPI. *Id.* at 48-50.

On January 12, 1966, counsel for Juan wrote to Title Officer Elias P. Sablan requesting information regarding the ownership of approximately sixteen hectares of land

[2] *See* Appellants' Excerpts of Record at 19, 44-47.

formerly owned by Juan's mother, Rufina. Sablan replied on January 18, 1966. Referring to the ten hectares in TD 766, he stated that the property had vested in the TTPI, pursuant to the 1953 public hearing. *Id.* at 22, 25.

On August 23, 1989, the plaintiffs filed a complaint in the U.S. District Court for the Northern Mariana Islands, alleging that TD 766 was void ab initio because not all of Felipe's heirs received notice of the hearing. As a result, they asserted, their rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution were violated. They alleged that Lots 647, 648, 649, 650, 651, 655 and 665 belonged to them. They also alleged an unjust taking of the land by the TTPI and prayed that the court either return the property to Felipe's heirs or award damages in the amount of thirty million dollars.[3]

On August 9, 1990, the District Court dismissed the complaint with prejudice. It concluded that the claims were barred by a Commonwealth of the Northern Mariana Islands ("CNMI") statute of limitations. Because one of the two claims was construed as being predicated on 42 U.S.C. § 1983, the court employed 7 CMC § 2505, a catchall six-year limitations period. The court also noted in dicta that even if it applied a longer limitations period of twenty years, that period would have expired three years prior to the filing of the action. *See Taman v. Marianas Pub. Land Corp.*, Civ. No. 89-0001 (D.N.M.I. Aug. 9, 1990), (order at 2-3, 3 n.1 and accompanying text).

This decision was appealed to, and ultimately affirmed by, the Ninth Circuit Court of Appeals on the statute of limitations grounds, employing the two-year limitations period under 7 CMC § 2503(d). *Taman v. Marianas Pub. Land Corp.*, App. No. 90-16254 (9th Cir. July 8, 1992) (unpublished slip op. at 2-4). The plaintiffs did not appeal from the Ninth Circuit decision.

On Nov. 10, 1992, the plaintiffs filed an action in NMI trial court alleging unjust taking of Felipe's property and praying for compensatory damages. The disputed lots are 647, 648, 650, 651, 655 and 665, consisting of approximately 159,964 square meters, or sixteen hectares.[4] In its response, MPLC alleged seven defenses, one of which was res judicata.

The trial court concluded that, as a matter of law, Felipe's heirs received sufficient notice of the Claims Office hearing and that TD 766 should be afforded administrative res judicata effect. *Taman v. Marianas Pub. Land Corp.*, Civ. No. 92-1490 (N.M.I. Super. Ct. May 11, 1994) (memorandum decision at 4-8). The plaintiffs timely appealed.

## ANALYSIS

The plaintiffs argue that MPLC, through its predecessor in interest, unjustly took Lot 648 under eminent domain without compensation. They contend that this claim arises in part under the Public Purpose Land Exchange Act ("Exchange Act"), 2 CMC § 4141 et seq., which renders any statute of limitation inapplicable. They also argue that a lack of notice to *all* of Felipe's heirs of the title determination process violated their rights to due process under the Fourteenth Amendment to the U.S. Constitution.[5] Hence, they contend that TD 766 should not be granted administrative res judicata effect.

We agree with the trial court that the doctrine of res judicata bars the plaintiffs from raising the due process and unjust taking claims before the trial court—however, on other grounds.

Under the doctrine of res judicata the previous litigation of either a claim or issue may preclude subsequent litigation of that same claim or issue by the same parties or their privies. *See In re Estate of Camacho*, 4 N.M.I. 22, 25 (1993) (citing RESTATEMENT (SECOND) OF JUDGMENTS ["JUDGMENTS"] §§ 17 (merger), 18 (bar), 27 (issue preclusion) (1982)). Subsequent litigation will be barred where a court of competent jurisdiction[6] has rendered a valid and final judgment on the merits. *See id.* and JUDGMENTS §§ 1, 13, 17.

Specific to successive federal and state court actions, the rules of res judicata will apply where the

---

[5] The plaintiffs did not assert a due process violation in their complaint. However, because the court resolved the issue, it appears as though it was litigated and the complaint impliedly amended under Com. R. Civ. P. 15(b).

[6] "A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action." RESTATEMENT (SECOND) OF JUDGMENTS [hereinafter JUDGMENTS] § 1 (1982). A court is competent to hear a matter where it has (1) subject matter jurisdiction and (2) either submission by the parties to its jurisdiction or adequate notice to the parties with territorial jurisdiction. *Id.*

---

[3] *See* Complaint, *Taman v. Marianas Pub. Land Corp.*, Civ. No. 89-001 (D.N.M.I. filed Aug. 23, 1989).

[4] Complaint, *Taman v. Marianas Pub. Land Corp.*, Civ. No. 92-1490 (N.M.I. Super. Ct. filed Nov. 10, 1992). This complaint is nearly identical to that filed in the U.S. District Court, save for the omission of both the due process allegation and the alternative prayer for the recovery of the land.

court of second instance does not have exclusive judicial or enforcement jurisdiction. *See* JUDGMENTS §§ 26(1)(c) & cmt. c(1) (bar), 28 cmt. e (issue preclusion).[7]

█ Because the plaintiffs raise the same claims and issues placed before the District Court, the initial issue we must examine is not whether TD 766 should be afforded administrative res judicata effect but whether the previous District Court decision precludes the plaintiffs from raising those claims or issues before this Court.[8] Based on the relevant undisputed facts and applicable law, we conclude that all of the plaintiffs, either as parties to the previous District Court action or their privies, were precluded from bringing the unjust taking and due process claims before the trial court.

█ First, the plaintiffs concede that the District Court had jurisdiction to entertain their due process and unjust taking claims, and that they could have raised their arguments with respect to the Exchange Act before that court but chose not to do so.[9] Also, in both cases the plaintiffs prayed for compensatory damages, an award of which could have been enforced in either court.

█ Second, the claims raised before the federal and NMI courts were the same. JUDGMENTS takes a "transactional analysis" approach to defining a "claim," and a plaintiff's claim will be barred where it is included in "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* § 24.

"In general, the expression ['transaction'] connotes a natural grouping or common nucleus of operative facts." *Id.* Thus, "'[a]ll claims arising out of one transaction or factual situation are treated as being part of a single cause of action, and they are required to be litigated together.'" *Brye v. Brakebush*, 32 F.3d 1179, 1183 (7th Cir. 1994) (applying transactional analysis in JUDGMENTS) (citation omitted).

█ Both the federal and NMI actions revolved around the propriety of the Claims Office hearing and the issuance of TD 766. Indeed, at oral arguments, the plaintiffs acknowledged that they stemmed from the same factual situation, and that the only difference is that they now seek compensatory damages for the unjust taking claim under the Exchange Act.[10] Hence, the claims were the same because they arose out of the same factual situation or transaction. That the plaintiffs now attempt to frame the basis of the compensatory relief for which they prayed before the trial court within the context of the Exchange Act does not change the nature of the claim under a transactional analysis. *See* JUDGMENTS §§ 24 cmt. c, 25.[11]

█ Third, the District Court judgment was rendered "on the merits," for purposes of claim preclusion. The dismissal was "with prejudice." Such a dismissal "operates as an adjudication upon the merits," unless it is for either lack of jurisdiction, improper venue, or for failure to join a party. Com. R. Civ. P. 41(b); Fed. R. Civ. P. 41(b). *See* JUDGMENTS § 19 cmt. e (rule of bar applicable to results indicated in Fed. R. Civ. P. 41).[12]

█ Also, a dismissal on the basis of a failure to comply with a statute of limitations is generally a decision "on the merits" for purposes of claim preclusion. *Martel v. Stafford*, 992 F.2d 1244, 1245-46 (1st Cir. 1993); *Cannon v. Loyola Univ. of Chicago*, 609 F. Supp. 1010, 1016 (N.D. Ill. 1985), *aff'd*, 784 F.2d 777 (7th Cir. 1986), *cert. denied*, 479 U.S. 1033, 107 S. Ct. 880, 93 L. Ed. 2d 834 (1987). Because we would apply the same six year statute of limitation employed by the District Court,[13] its limitations decision has a preclusive effect. *Cf.* JUDGMENTS, reporter's note to § 19 cmt. f.[14]

---

[10] *Id.* at counter 420-60.

[11] A claim is the same even where a plaintiff is prepared either to present different "evidence or grounds or theories of the case" or "seek remedies or forms of relief not demanded in the first action." JUDGMENTS, *supra* note 6, § 25.

[12] *Cf. Sablan v. Iginoef*, 1 N.M.I. 190, 202-03 (1990) (voluntary dismissal with prejudice of claim and counterclaim precluded relitigation under res judicata), *appeal dismissed sub nom.*, *Sablan v. Manglona*, 938 F.2d 970 (9th Cir. 1991).

[13] As the plaintiffs sought monetary compensation and not the recovery of, or an interest in, land in the trial court action, we would apply 7 CMC § 2505, and not 7 CMC § 2502(a)(2). Even if we were to apply the longer twenty-year limitation period under 7 CMC § 2502, the District Court noted correctly in dicta that the limitations period under that statute expired as well.

[14] "Where, as a matter of choice of law, the second jurisdiction would apply the statute of limitations of the first jurisdiction, the issue of the running of the statute would be resolved by the determination in the first proceeding." JUDG-

---

[7] *See also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION §§ 4411, 4412 (1981).

[8] As the District Court determined that the claims were time barred under a local statute of limitations, we look to our law to determine if that court's decision precluded litigation of the same claims or issues before an NMI court. *See generally* JUDGMENTS, *supra* note 6, § 87 & cmt. b.

[9] Tape of Oral Arguments at counter 398-415, App. No. 94-035 (July 7, 1995) (on file with Court).

Fourth, the District Court judgment was "final" for purposes of claim preclusion. For a decision to be final, it "must ordinarily be a firm and stable one, the 'last word' of the rendering court." JUDGMENTS § 13 cmt. a. "It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action." *Id.* § 14 cmt. a; *see also id.* § 14. The Ninth Circuit affirmed the District Court decision, an affirmance which was not appealed, over four months prior to the commencement of the action in the trial court. Hence, for purposes of res judicata, the District Court decision was final. *See Aldan-Pierce v. Mafnas,* 31 F.3d 756 (9th Cir. 1994) (dismissal of appeal from Ninth Circuit rendered trial court decision, affirmed by appellate court, "final"), *cert. denied,* ___ U.S. ___, 115 S. Ct. 913, 130 L. Ed. 2d 794 (1995).

Fifth, the current plaintiffs are either parties to the previous action or their privies, persons upon whom the District Court decision has preclusive effect. *See* JUDGMENTS § 43. If the action "is regarded as having concerned 'property,' the determinations in the action delimit the property interest of the persons and therefore establish what passes to their successors to the interest." *Id.* cmt. a. This occurs where, for example, title to property is at issue. *Id.*

Here, the plaintiffs' claim to the land stems from Felipe. *See* Appellants' Brief at 11-12. Because the claims brought before the District Court dealt directly with the matter of the title to the property, as between any purported interest of Felipe and a Japanese citizen, the plaintiffs are precluded, as Felipe's successors-in-interest, from bringing the same claim before our courts with respect to the ten hectares in TD 766. This preclusive effect applies to not just the claims "actually litigated but also claims that *might* have been litigated" as well. JUDGMENTS § 43 cmt. b (emphasis added); see also *supra* note 11.

Finally, the record does not indicate the applicability to the plaintiffs' claims of any of the exceptions to the general rule of bar, as enunciated in JUDGMENTS. *See generally id.* §§ 20, 26.

## CONCLUSION

Based on the foregoing, we hereby **AFFIRM** the trial court's grant of partial summary judgment in favor of the defendant, Marianas Public Land Corporation, on other grounds, and **REMAND** this matter for further proceedings.

---

MENTS, *supra* note 6, reporter's note to § 19 cmt. f. The plaintiffs' arguments that the Exchange Act serves to lift any otherwise applicable statute of limitation are without merit. A predicate to any action under the Exchange Act is that either a plaintiff or his or her predecessor in interest owned the property before it was taken. *See generally* 2 CMC §§ 4142, 4143(b), 4147; Sen. Report No. 53 at 3, 5th N.M.I. Legis. (1986); *Rios v. Marianas Pub. Land Corp.,* 3 N.M.I. 512, 521 (1993) (Exchange Act does not serve to set aside a limitations period in an action in which ownership of land is contested); *Apatang v. Marianas Pub. Land Corp.,* 1 N.M.I. 140, 156 (1990) (presumes "land area promised and not conveyed"). In essence, the plaintiffs are impermissibly attempting to collaterally attack the District Court's decision, which precluded such an ownership determination.